# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

PRISCILLA LEFEBURE                                     CIVIL ACTION

VERSUS                                                 17-1791-SDD-EWD

BARRETT BOEKER, Assistant Warden
Louisiana State Penitentiary, individually
and in his official capacity, WEST
FELICIANA PARISH, SAMUEL D. D'AQUILLA,
20th Judicial District, individually and in his
official capacity, District Attorney, J. AUSTIN
DANIEL, Sheriff, West Feliciana Parish,
INSURANCE CO. DOES 1-5, DOES 6-20

## RULING AND ORDER

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant,

Samuel C. D'Aquilla, individually and in his official capacity as District Attorney for the

20th Judicial District, State of Louisiana ("Defendant" or "the DA"), pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff, Priscilla Lefebure ("Plaintiff" or

"Lefebure"), filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3]  The

Court heard Oral Argument on this motion on March 25, 2019, and granted in part and

denied in part the DA's motion, with detailed written reasons to be assigned.[4]  For the

reasons which follow, the Court has granted in part and denied in part the DA's motion.

---

[1] Rec. Doc. No. 57.
[2] Rec. Doc. No. 70.
[3] Rec. Doc. No. 74.
[4] Rec. Doc. No. 81.  The Court also reserved the right to "reconsider, modify, and/or supplement the oral reasons" assigned from the bench.
51793

## I.    BACKGROUND

Plaintiff filed a *Complaint*[5] and *First Amended Complaint*[6] seeking relief under 42 U.S.C. § 1983 and § 1985 and under Louisiana law against Barrett Boeker ("Boeker"), Assistant Warden at the Louisiana State Penitentiary, individually and in his official capacity, West Feliciana Parish;[7] Samuel C. D'Aquilla, District Attorney for the 20th Judicial District, individually and in his official capacity; J. Austin Daniel, Sheriff, West Feliciana Parish ("Sheriff Daniel"); and various unknown insurance companies and unknown defendants.

At the outset, the Court recognizes that the allegations set forth in Plaintiff's *Complaint* and *First Amended Complaint* are disturbing and presented in vivid detail.  At this stage of the matter, this Court is charged with accepting the pled facts as true.  The Court also notes that this matter, as pled, is factually unique to the body of cases implicated by the alleged claims, defenses, and the instant motion.  While the claims, defenses, and arguments raised are not new to this Court, the law as applied to the facts alleged is largely uncharted in this Circuit.

Plaintiff claims that, on December 1, 2016, Boeker raped her at his home on the grounds of the Louisiana State Penitentiary.[8]  Plaintiff claims that Boeker sexually assaulted her a second time on December 3, 2016.[9]  Plaintiff had a rape kit administered and completed on December 8, 2016, at Woman's Hospital in Baton Rouge.[10]  Plaintiff

---

[5] Rec. Doc. No. 1.
[6] Rec. Doc. No. 37.
[7] Defendant, Barrett Boeker, also filed a motion to dismiss pursuant to Rule 12(b)(6), or alternatively, motion for more definite statement pursuant to Rule 12(e).  Rec. Doc. No. 51.  Boeker's motion to dismiss is not addressed in the instant Ruling and Order will be addressed by separate Ruling and Order.
[8] Rec. Doc. No. 37, p. 1, ¶ 1.
[9] Rec. Doc. No. 37, p. 1, ¶ 2.
[10] Rec. Doc. No. 37, p. 2, ¶ 3.
51793

alleges that the report on the rape kit noted bruising in the pattern of fingers and hand prints and a red, irritated cervix.  Photographs were taken.[11]  Plaintiff pleads disturbing facts and circumstances of the alleged rape and sexual assault, the rape kit findings, and her alleged damages.[12]

Boeker was arrested for second degree rape on December 20, 2016; however, he was never indicted or convicted.[13]  Plaintiff alleges she was denied equal protection and due process under the law as a result of the failure of the DA and Sheriff Daniel to investigate Boeker's alleged crimes and obtain the rape kit, which Plaintiff claims demonstrates a conspiracy to protect Boeker. Plaintiff also claims her constitutional right have been violated by the DA and Sheriff Daniel's alleged policy of disproportionate treatment of women and sexual assault victims.

Prior to the grand jury hearing, Plaintiff avers that neither the DA nor Sheriff Daniel requested, picked-up, or examined her rape kit.[14]  Thus, the rape kit along with the photographic evidence contained therein did not become a part of the DA's investigative file and was never presented to the grand jury.  Plaintiff also claims that, prior to the grand jury hearing, the DA did not interview or speak to Plaintiff because, according to DA in a public statement, he was "uncomfortable" doing so.[15]  Plaintiff further claims that the DA marked up his file copy of the police report to point out purported discrepancies in Plaintiff's description of the events and pointedly noted "plead 5th" on the police report.[16]

---

[11] Rec. Doc. No. 37, p. 2, ¶ 4.
[12] Rec. Doc. No. 37, pp. 1-7 and 10-16.
[13] Rec. Doc. No. 37, p. 2, ¶ 5.
[14] Rec. Doc. No. 37, p. 3, ¶ 9.
[15] Rec. Doc. No. 37, p. 3, ¶ 11.
[16] Rec. Doc. No. 37, p. 3, ¶ 10.
51793

Because it comprised part of the DA's investigatory file, the annotated and underlined police report was presented to the grand jury. Plaintiff also alleges that the DA colluded with the Sheriff to not investigate her rape claim.[17] The gravamen of the Plaintiff's *Complaint* is that the DA worked in concert with the Sherriff to significantly curtail the thoroughness of the investigative process in order to manipulate the grand jury outcome.

On December 21, 2017, Plaintiff filed this action against Boeker, the DA, and Sheriff Daniel seeking to hold them individually and jointly liable for damages resulting from the alleged rape, sexual assault, and what Plaintiff alleges as the lack of investigation into her criminal complaints against Boeker. Plaintiff also seeks declaratory and injunctive relief.[18] In Plaintiff's *Amended Complaint*,[19] Plaintiff asserted the following causes of action adverse to the following Defendants: (1) violation of the 14th Amendment (Equal Protection) under 42 U.S.C. § 1983 and Louisiana Constitution Article I, Section 3 (Right to Individual Dignity) adverse to District Attorney D'Aquila and Sheriff Daniel in their individual and official capacities;[20] (2) violation of the 14th Amendment (Substantive Due

---

[17] Additional allegations and details are alleged in support Plaintiff's claims, such as: Defendant claimed that there were no photos or cooperative witnesses available for the grandy jury hearing, but Plaintiff pleads that there were photos with the rape kit and numerous corroborating witnesses; the issue at the grand jury hearing, according to Defendant, was credibility, and Defendant determined without ever speaking to Plaintiff that he did not believe her; Defendant did not believe that the rape kit was necessary because Boeker said that Plaintiff consented to the alleged sexual acts, yet Plaintiff maintained at all times that she did not consent; witnesses agree that rape kits are the "linchpins" to a proper investigation of sexual assault allegations; Defendant's policy is to present everything in his file to the grand jury, but there was no mandate to request the rape kit and make it part of the file (suggesting an intentional design of a file void of evidence); all Defendants conspired from the time of Boeker's arrest to not investigate or prosecute Boeker for the charges; Boeker's wife is Plaintiff's cousin, and she told Plaintiff that Boeker has committed these same acts in the past; Boeker's counsel is a relative of District Attorney D'Aquila; Boeker was the Assistant Warden of the Louisiana State Penitentiary at the time, living in a house on the premises; on the night Boeker was arrested, he, his counsel, both Defendants, and the Warden met, and it was determined that Boeker would be given preferential treatment and serve no jail time; Defendants colluded in the decision to not investigate the claims. Rec. Doc. No. 37, ¶¶ 1-34 and 50-87.
[18] Rec. Doc. No. 1, pp. 22-23, ¶ 128.
[19] Rec. Doc. No. 37.
[20] Rec. Doc. No. 37, pp. 16-19, ¶¶ 88-103.
51793

Process) under 42 U.S.C. § 1983 and Louisiana Constitution Article I, Section 2 (Due Process) adverse to District Attorney D'Aquilla and Sheriff Daniel in their individual and official capacities;[21] (3) Civil Conspiracy to violate civil rights under 42 U.S.C. §§ 1983 and 1985 adverse to all Defendants;[22] (4) Abuse of Process under 42 U.S.C. § 1983 adverse to all Defendants;[23] (5) Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Assault, Battery, False Imprisonment, Rape, and Sexual Battery under Louisiana State Law adverse to Defendant Boeker;[24] and (6) Direct Action Claims under Louisiana State Law adverse to all Defendant unknown insurance companies.[25]

In the motion before this Court, the DA seeks dismissal of Plaintiff's claims under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted on her substantive federal and state law claims. Plaintiff opposes the Defendant's motion, arguing that she has demonstrated Article III standing, that Defendant is not entitled to any immunity, and she has sufficiently and specifically pled plausible causes of action adverse to Defendant.

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(1) Motion to Dismiss

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before

---

[21] Rec. Doc. No. 37, pp. 19-20, ¶¶ 104-116.
[22] Rec. Doc. No. 37, pp. 21-22, ¶¶ 117-126.
[23] Rec. Doc. No. 37, p. 22, ¶¶ 127-132.
[24] Rec. Doc. No. 37, p. 23, ¶¶ 133-136.
[25] Rec. Doc. No. 37, pp. 23-24, ¶¶ 137-142.
51793

addressing any attack on the merits.'"[26]  If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)."[27]  The reason for this rule is to preclude courts from issuing advisory opinions and barring courts without jurisdiction "from prematurely dismissing a case with prejudice."[28]

"A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[29]  Therefore, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[30]  Ultimately, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."[31]

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, *i.e.*, the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, *i.e.*, the facts in the complaint supporting subject matter jurisdiction are questioned.[32]  As in this case,  when

---

[26] *Crenshaw-Logal v. City of Abilene, Texas*, 436 Fed.Appx. 306, 308 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); Fed.R.Civ.P. 12(h)(3)).

[27] *Crenshaw-Logal*, 436 Fed.Appx. at 308 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

[28] *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and *Ramming*, 281 F.3d at 161).

[29] *Wagster v. Gautreaux*, 2014 WL 3546997, at *1 (M.D. La. July 16, 2014) (quoting *Hall v. Louisiana, et al*, 974 F.Supp.2d 978, 985 (M.D. La. Sept. 30, 2013)) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992)).

[30] *Lewis v. Brown*, 2015 WL 803124, at *3 (M.D. La. Feb. 25, 2015).

[31] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

[32] *In re Blue Water Endeavors, LLC*, Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, at *3 (E.D. Tex. Jan. 6, 2011) (citing *Rodriguez v. Texas Comm'n of Arts*, 992 F.Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000)).

51793

a defendant files a Rule 12(b)(1) motion without accompanying evidence it is analyzed as a facial attack[33]  In a facial attack, allegations in the complaint are taken as true.[34]

### B.      Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[35]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[36]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[37]  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.[38]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[39]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[40]  However, "[a] claim has facial plausibility when the

---

[33] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[34] *Blue Water*, 2011 WL 52525, at *3 (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995)).

[35] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[36] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

[37] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 540, 570 (2007)).

[38] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 544 (hereinafter "*Twombly*").

[39] *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted).

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*") (quoting *Twombly*, 550 U.S. at 557).

51793

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[42]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[43]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[44]

### C.    Standing

"Article III standing is a jurisdictional prerequisite."[45]  If a plaintiff lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate.[46]  The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[47]  In reviewing a motion under 12(b)(1) for lack of subject matter jurisdiction, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[48]

Article III of the Constitution limits federal courts' jurisdiction to certain "cases" and "controversies."  "No principle is more fundamental to the judiciary's proper role in our

---

[41] *Id.* (citing *Twombly*, 550 U.S. at 556).

[42] *Id.*

[43] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[44] *Twombly*, 550 U.S. at 555 (quoting *Papassan v. Allain*, 478 U.S. 265, 286 (1986)).

[45] *Crenshaw-Loga*l, 436 Fed.Appx. at 308 (citing *Steel Co*., 523 U.S. at 101, 118 S.Ct. 1003, and *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).

[46] *Whitmore v. Arkansas*, 495 U.S. 149, 154-55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).

[47] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming*, 281 F.3d at 161.

[48] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

51793

system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[49]  "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue."[50]

Defendant is correct that to establish constitutional standing, "the plaintiff must show that [she] has suffered an 'injury in fact' that is: concrete and particularized and actual or imminent, fairly traceable to the challenged action of the defendant; and likely to be redressed by a favorable decision."[51]  However, Defendant contends that "crime victims do not have standing to 'contest the policies of the prosecuting authority when he or she is neither prosecuted nor threatened with prosecution."[52]

Citing *Linda R.S. v. Richard D. and Texas*,[53] the DA argues Plaintiff lacks standing to bring claims against him because she is a "crime victim" who is contesting the DA's "prosecuting authority," and, since Plaintiff is neither the person being prosecuted nor threatened with prosecution, she lacks standing to bring these claims.[54]  In *Linda*, the plaintiff was the mother of a child born out of wedlock who sought a judgment declaring unconstitutional a Texas criminal statute which provided that a parent who fails to support his/her children is subject to prosecution.  The plaintiff challenged the statute because it

---

[49] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (internal quotation marks omitted); *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (internal quotation marks omitted); *see, e.g., Summers v. Earth Island Institute*, 555 U.S. 488, 492-493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

[50] *Raines,* 521 U.S. at 818, 117 S.Ct. 2312; *see also Summers,* 555 U.S. at 492-493, 129 S.Ct. 1142; *DaimlerChrysler Corp.,* 521 U.S. at 342, 126 S.Ct. 1854; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

[51] Rec. Doc. No. 57-1, pp. 4-5 (citing *Lugan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

[52] Rec. Doc. No. 57-1, p. 5 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L. Ed. 2d 536 (1977)).

[53] *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L. Ed. 2d 536 (1977)

[54] *Id.*

51793

only applied to parents of children born of marriage.  She also sought an injunction forbidding the district attorney from declining to prosecute the biological father of her child simply because they were unmarried.  The case was dismissed for lack of standing on the nexus prong.  The Supreme Court found that the plaintiff had "an interest in the support of her child" and suffered an injury, *i.e.*, lack of payment of child support without a legal mechanism to enforce payment.  However, the Court ruled that the plaintiff could not show the second prong of the standing requirement, namely, a "direct nexus" between her injury and the government action which she attacked.[55]  The Supreme Court explained:

> The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.  *See Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962); *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961).  Although *these cases arose in a somewhat different context*, they demonstrate that, in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another. Appellant *does* have an interest in the support of her child.  But given the special status of criminal prosecutions in our system, we hold that appellant has made an insufficient showing of a *direct nexus* between the vindication of her interest and the enforcement of the State's criminal laws.[56]

In *Linda*, the Supreme Court pragmatically recognized that the plaintiff lacked a nexus between her injury/interest (support for her child) and enforcement of the law at issue

---

[55] *Linda R.S.*, 410 U.S. at 617-18.  "To be sure, appellant no doubt suffered an injury stemming from the failure of her child's father to contribute support payments.  But the bare existence of an abstract injury meets only the first half of the standing requirement.  'The party who invokes (judicial) power must be able to show … that he has sustained or is immediately in danger of sustaining some direct injury as the result of (a statute's) enforcement.'"  *Linda R.S.*, 410 U.S. at 618 (citing *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)).  "Here, appellant has made no showing that her failure to secure support payments results from the nonenforcement, as to her child's father, of Art. 602. …  Thus, if appellant were granted the requested relief, it would result only in the jailing of the child's father."  *Linda R.S.*, 410 U.S. at 618.

[56] *Linda R.S.*, 410 U.S. at 619 (emphasis added).

51793

because enforcement would likely place the father in jail unable to pay the child support that she was ultimately seeking.[57]

Turning to the present case, neither Plaintiff nor Defendant directed the Court to Fifth Circuit jurisprudence supporting a finding that the Plaintiff lacks standing in this matter.  Likewise, the Court did not identify Fifth Circuit jurisprudence pertinent to the issue of standing under similar factual circumstances.  The DA cites the Eighth Circuit's decision in *Parkhurst v. Tabor*[58] which relies upon *Linda*.  In *Parkhurst,* the biological mother and adoptive father of a minor child asserted claims under Section 1983 against Arkansas state prosecutors and the county, alleging a violation of their child's right to equal protection under the Fourteenth Amendment based on the prosecutors' decision to forego prosecution of the child's biological father for sexual assault of the child.  The Western District of Arkansas granted the prosecutor's Rule 12 motion.  The Eighth Circuit Court of Appeals affirmed, holding that the plaintiffs did not suffer an injury in fact and therefore lacked standing.

In its analysis, the Eighth Circuit cited to *Linda,* stating:  "[C]rime victims have standing to challenge allegedly discriminatory prosecutorial conduct only if those victims have a constitutional right to the nondiscriminatory prosecution of crime such that its deprivation constitutes injury in fact."[59]  Notably, the *Parkhurst* court specifically recognized that  "crime victims have standing" where there is a showing that the allegedly discriminatory treatment implicates the protections of the Fourteenth Amendment.[60]

---

[57] *Id.*
[58] 569 F.3d 861, 866 (8th Cir. 2009).
[59] *Parkhurst*, 569 F.3d at 865 (citing *Linda*, 410 U.S. at 617).
[60] *Id.*
51793

Next, the *Parkhurst* court drew a distinction between crime victims who have standing to bring claims based on the alleged "failure to protect" rather than the alleged "failure to prosecute":

> The Parkhursts point to several cases where crime victims were determined to have a right to challenge the allegedly discriminatory provision of police protection.  *See, e.g., Estate of Macias v. Ihde*, 219 F.3d 1018 (9th Cir. 2000); *Thurman v. City of Torrington*, 595 F.Supp. 1521 (D.Conn.1984).  In *Macias*, family members of a slain woman brought a § 1983 suit alleging that police officers had ignored repeated complaints of threatened violence and provided 'inferior police protection' because the decedent was a member of a disfavored class of victims, thereby violating the Equal Protection Clause.  219 F.3d at 1019.  The Ninth Circuit concluded, without reaching the merits, that '[t]here is a constitutional right [ ] to have police services administered in a nondiscriminatory manner – a right that is violated when a state actor denies such protection to disfavored persons.' *Id.* at 1028.  When faced with a similar allegation of discriminatory police protection, the district court in Thurman determined that '[p]olice action is subject to the equal protection clause and section 1983 whether in the form of commission of violative acts or omission to perform required acts pursuant to the police officer's duty to protect.'  595 F.Supp. at 1527.
>
> The Parkhursts claim to have been injured by a failure to prosecute Belt rather than by a failure to provide police protection to H.P., and they point to no cases which have recognized a right to compel prosecution of a wrongdoer.  *That the standing analysis differs depending on whether the alleged injury arises from a failure to prosecute or a failure to protect is not without rationale.  While police officers are under a 'statutorily imposed duty to enforce the laws equally and fairly',* … '[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.'[61]

In the Court's view, the Plaintiff's claims in the instant matter against the DA are not for his failure to prosecute Boeker.  Plaintiff may claim that the alleged failure to fully investigate was motivated by a preference in the prosecutorial outcome, but the Plaintiff does not assert the prosecutorial outcome as her injury.  Rather, Plaintiff seeks relief for

---

[61] *Parkhurst,* 569 F.3d at 866-67 (emphasis added).
51793

the failure to investigate her claims, for the alleged conspiracy with the Sheriff not to investigate her claims, and for the alleged long-standing practice, policies and procedures that fostered the failure to investigate resulting in a discriminatory impact upon sexual assault victims and women in violation of the Equal Protection and Due Process Clauses.[62]

The DA also relies on *Doe v. Pocomoke City*.[63]  In *Doe*, female victims of sexual assaults brought suit against city officials and the county attorney, alleging civil rights violations in connection with their failure to properly investigate and refusal to prosecute sex crimes.  The claims were dismissed for lack of standing.  The plaintiffs in *Doe* did not complain about any specific sexual assault on themselves or the alleged failure of the criminal process as to themselves.   Rather, *Doe* involved  plaintiffs as interested citizens, albeit prior victims, coming forward to urge the investigation and prosecution in a sexual assault matter that was completely unrelated to them.   The court in *Doe*, relying upon *Linda*, found that the plaintiffs lacked standing as they failed to demonstrate an injury in fact and nexus.[64]

*Doe* is also distinguishable from the case before the Court.   Here, Plaintiff has alleged a particularized injury "fairly traceable" to, and allegedly as a result of, the alleged actions or inactions of the DA, individually and in concert with Sheriff Daniel.  Plaintiff has not filed suit as an "interested citizen" seeking generalized relief.  Plaintiff claims that the DA refused to request, retrieve, and examine her rape kit as part of his investigation; thus,

---

[62] Rec. Doc. No. 37, *supra*.
[63] 745 F.Supp.1137 (D.Md. 1990).
[64] Doe, 745 F.Supp. at 1139-40.
51793

the rape kit never became a part of the prosecutor's file.[65] Plaintiff alleges that this was intentional and part of a broader conspiracy and plan to protect Boeker, a fellow law enforcement officer.[66] She further claims the DA conspired with all Defendants and agreed not to investigate her rape complaint to ultimately protect Boeker from prosecution.[67] According to Plaintiff, the DA's actions or inactions, protocol and procedures, disproportionately affect female sexual assault victims generally and violated her equal protection rights, specifically.[68] In other words, Plaintiff claims the DA's intentional acts in this case and the DA's policies and procedures create the danger of an increased risk of harm to Plaintiff and other victims of sexual assault who are disproportionately women.[69] She further alleges a "long-standing refusal" to investigate sexual assault crimes against women and/or female-identified individuals.[70] In fact, Plaintiff pleads a "history" of the DA's discrimination against women.[71] Plaintiff alleges that the DA implemented "long-standing" and "historical" policies and procedures that violated her equal protection rights.[72] As a result of the alleged conduct of the DA, Plaintiff alleges detailed mental and physical damages she has sustained.[73]

---

[65] Rec. Doc. No. 37, ¶¶ 9 and 27.
[66] Rec. Doc. No. 37, ¶¶ 77-87.
[67] Rec. Doc. No. 37, ¶¶ 77-87.
[68] Rec. Doc. No. 37, ¶¶ 88-103.
[69] Rec. Doc. No. 37, ¶¶ 90-95.
[70] Rec. Doc. No. 37, ¶ 96.
[71] Rec. Doc. No. 37, ¶ 98.
[72] Rec. Doc. No. 37, ¶¶ 99-102.
[73] Rec. Doc. No. 37, pp. 24-25, ¶ 143 ("conscious and severe physical, mental, and emotional distress, and pain and suffering; economic and other monetary injury including, but not limited to, loss of earnings, loss of work prospects, loss of future income, and loss of past income; and, any other such damage cognizable under these laws and statutes and provable at trial").

51793

Plaintiff also claims that ignoring the existence of her rape kit constitutes a taking of her property and a violation of her substantive due process rights.[74] Plaintiff claims a constitutional property right in her rape kit and further claims that the DA ignoring her rape kit and failing to present it to the grand jury constitutes a "taking" without substantive due process. Plaintiff claims that the complete failure to investigate, including the failure to request the rape kit and have it tested, deprived her of her due process rights to have her alleged crime properly investigated.[75] Plaintiff further claims the Defendants' conspiracy to protect Boeker from prosecution resulted in the violation of her rights to equal protection under the law and substantive due process.[76]

On the face of the *Complaint* and *First Amended Complaint*, the Court finds that Plaintiff has alleged an injury and interest particular to her and a nexus between her injury/interest and the claims against the DA. As set forth above, there is jurisprudential support for the finding the Plaintiff has standing based on the alleged violation of the Equal Protection Clause. The Court will discuss the viability of the alleged constitutional violations in greater detail below. Accordingly, the Court denies the DA's *Motion to Dismiss* under Rule 12(b)(1) for lack of standing.

### D. 42 U.S.C. § 1983 Claims

"Section 1983 imposes liability on anyone who, under color of state law, deprives

---

[74] Rec. Doc. No. 37, ¶¶ 84, 92, and 104-116. Plaintiff contends a policy requiring collection and examination of rape kits would have prevented her injuries and seeks: a declaratory judgment that it is unconstitutional to allow rape kits and examinations to go without review; injunctive relief enjoining the Defendants from acting in concert in violation of the Constitution; a plan that will require the Sheriff and the DA to collect and review rape kits and present them as evidence; and compensatory and punitive damages. Rec. Doc. No. 37, pp. 25-26, ¶ 144.
[75] Rec. Doc. No. 37, ¶¶ 84, 92, and 104-116.
[76] Rec. Doc. No. 37, ¶¶ 117-126.
51793

a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[77] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law."[78]  As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution – not for violations of duties of care arising out of tort law.[79] As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[80]

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[81]  Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.  However, to be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law.  In contrast, a state actor may have Section 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law.[82]

---

[77] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
[78] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D. La. May 8, 1998); *Elphage v. Gautreaux*, 2013 WL 4721364, at *5 (M.D. La. Sept. 3, 2013).
[79] *Griffith v. Johnston*, 899 F.2d 1427, 1436 (5th Cir. 1990).
[80] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
[81] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).
[82] *Coleman v. East Baton Rouge Sheriff's Office*, 2014 WL 5465816, at *3 (M.D. La. Oct. 28, 2014).
51793

The DA has been sued under Section 1983 in both his individual and official capacities. There appears to be no dispute that the DA was acting "under color of law" in his alleged conduct. The Court turns to a consideration of whether Plaintiff has satisfied the first requirement to state a claim under Section 1983, namely to state a claim of a constitutional violation.

1.     <u>Constitutional Violations Alleged</u>

a.     *Equal Protection Clause*

The DA maintains Plaintiff has not stated a claim for an equal protection violation and cites to a decision from the District of Maryland, *Doe v. Pocomoke City*, wherein the court held that women who were victims of alleged sexual assault lacked standing to bring a claim against the town's Mayor and the State's attorney alleging those parties deliberately failed to properly investigate and prosecute sex crimes.[83] The DA also cites the Supreme Court's decision in *Linda R.S. v. Richard D.*, wherein the Court held that crime victims lack standing to "contest the polices of the prosecuting authority when he [or she] is neither prosecuted nor threatened with prosecution."[84]

The Court does not view Plaintiff's claim as one demanding the prosecution of her alleged attacker. Rather, Plaintiff's claim is that the Defendants have an implied policy or custom to not properly investigation claim of sexual assault by women which violates their official duties to protect the public equally. More recent jurisprudence recognizes this distinction.

---

[83] 745 F.Supp. 1137 (D. Md. 1990).
[84] 410 U.S. 614, 619 (1977).
51793

The Fourteenth Amendment states "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."[85] "[E]ssentially ... all persons similarly situated should be treated alike."[86] To plead such a claim, "a plaintiff typically alleges that [s]he 'received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'"[87] To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) "a state actor intentionally discriminated against [her] because of membership in a protected class," or (b) [s]he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[88]

In *DeShaney v. Winnebago County Dept.of Soc. Servs.*, the Supreme Court held that the "Due Process Clause does not require a State to provide its citizens with particular protective services."[89] At the same time, however, *DeShaney* noted that "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."[90] The Fifth Circuit stated: "this court acknowledged that certain intentionally discriminatory policies, practices, and customs of law enforcement with regard to domestic assault and abuse cases may violate the Equal Protection Clause under the *DeShaney* footnote."[91] While granting qualified immunity on the facts then before the court, *Shipp* provided an objective standard to inform

---

[85] U.S. Const. amend. XIV, § 1.
[86] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (citing *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993)) (internal quotations and additional citations omitted).
[87] *Id.* at 212–13 (citing *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).
[88] *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted).
[89] 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).
[90] *Id.* at 197 n. 3, 109 S.Ct. 998.
[91] *Beltran v. City of El Paso*, 367 F.3d 299,304 (citing *Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000), *overruled in part on other grounds by, McClendon*, 305 F.3d at 328–29).
51793

government officials of the type of conduct that violates federal constitutional or statutory rights.[92]  To sustain a gender-based equal protection challenge under *Shipp*, a plaintiff must show "(1) the existence of a policy, practice, or custom of law enforcement to provide less protection to victims of domestic assault than to victims of other assaults; (2) that discrimination against women was a motivating factor; and (3) that the plaintiff was injured by the policy, custom or practice."[93]  In *Village of Willowbrook v. Olech*, the Supreme Court held that the Equal Protection Clause can give rise to a cause of action on behalf of a "class of one," even when the plaintiff does not allege membership in a protected class or group.[94]  To state a class of one equal protection claim, a plaintiff must offer a comparator she contends is similarly situated, but treated more favorably for no rational purpose.[95]

The Court finds that Plaintiff has alleged a cognizable Equal Protection claim. However, although Plaintiff presented argument on the DA's individual liability for this claim at the oral argument, Plaintiff failed to address the DA's individual liability for an Equal Protection violation in her *Opposition*; specifically, Plaintiff failed in her written *Opposition* to respond to the DA's assertion of qualified immunity for the equal protection individual capacity violation Plaintiff asserted.  In keeping with the Court's comments at

---

[92] *Id.* (citing *Shipp* at 914 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))).

[93] *Shipp,* 234 F.3d at 914.

[94] *See Village of Willowbrook v. Olech*, 528 U.S. 562, 563-564 (2000) (finding the plaintiffs properly alleged they had been treated differently from other similarly situated property owners); *Gil Ramirez Grp., LLC v. Houst. Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015) (explaining that an equal protection claim depends on either identifying a class or showing that the aggrieved party is a "class of one").

[95] *Monumental Task Comm., Inc. v. Foxx*, No. 15-6905, 2016 WL 5780194, at *3 (E.D. La. Oct. 4, 2016) (citing *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007))(emphasis added).

51793

oral argument, Plaintiff will be allowed to amend her *Complaint* on this issue and will be ordered to file a Rule 7(a) Response to the DA's assertion of qualified immunity.

Many of Plaintiff's Equal Protection allegations implicate official capacity liability, and the Court will discuss this claim in greater detail below.

b.      *Due Process Clause – Access to the Courts*

Plaintiff alleged in her *Complaints* that the failure to obtain and process her rape kit constituted a "taking" under the Due Process Clause. However, Plaintiff abandoned this claim in her *Opposition* by failing to argue it and focused her Due Process claim instead on the alleged denial of her right of access to the courts allegedly caused by the DA's conduct, which she claims impeded her ability to receive benefits under the Louisiana Victim Compensation Fund ("LVCF"), which Plaintiff contends is the unconstitutional deprivation of a property interest. However, in *Carter v. State, Crime Victims Reparations Bd. and Fund,*[96] the Louisiana First Circuit Court of Appeal held that no property interest is created by the Louisiana Victims Reparations Act:

> The Louisiana Victims Reparations Act does not require the granting of applications for reparations upon the mere fulfillment of "certain specified qualifications." *See Hagood*, 385 So.2d at 409. Rather, the act allows the board wide discretion in its decision on awards. Under the law, the board considers the application using a preponderance of the evidence standard of review. La. R.S. 46:1809 A. The initial consideration is whether a pecuniary loss was sustained. *Id.* Secondly, the board must make ancillary findings, including the victim's level of cooperation with law enforcement and level of involvement in the crime itself. La. R.S. 46:1809 B. *Thus, reparations are a remedy or a benefit granted by the state, but not an entitlement.* Absent a protected property interest, a due process notice and hearing were not required. *See Hagood*, 385 So.2d at 409.[97]

---

[96] 2003-2728 (La. App. 1 Cir. 10/29/04), 897 So.2d 149.
[97] *Id.* at 151-52 (emphasis added).
51793

A benefit does not give rise to a constitutionally protected property interest. Plaintiff acknowledges the holding of *Carter* but urges the Court to ignore it, arguing that it is erroneous considering the mandatory language of the statute.

The Court is not inclined to overrule *Carter* in this case. Indeed, "[w]here the state's highest court has not yet spoken on an issue, the federal district court may look to the state's appellate courts for guidance."[98] Further, the United States Supreme Court has held that a decision by an intermediate appellate state court should not be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.[99] Considering the principles of federalism and comity as set forth in both the *Rooker-Feldman* doctrine[100] and the *Younger* abstention doctrine,[101] the Court declines to grant the relief Plaintiff requests. Any challenge to the constitutional scope and interpretation of a state statute should be made through the state court system before seeking relief from a federal district court. Accordingly, Plaintiff has failed to state a claim under Section 1983 for a Due Process Clause violation based on the alleged denial of access to the Louisiana Victim Compensation Fund.

c.      *Abuse of Process*

Plaintiff appears to allege an abuse of process claim under Section 1983 and under

---

[98] *TS & C Investments, L.L.C. v. Beusa Energy, Inc.* 637 F.Supp.2d 370, 374 (W.D. La.2009)(citations omitted).
[99] *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).
[100] The *Rooker Feldman* doctrine "holds that inferior federal courts do not have the power to modify or reverse state court judgments." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (citation omitted).
[101] *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971). Further, the "*Younger* abstention also allows federal courts to avoid interpreting state laws that would result in the unwarranted determination of federal constitutional questions." *Health Net, Inc. v. Wooley*, 534 F.3d 487, 495 (5th Cir. 2008) (citations and internal quotation marks omitted).
51793

state tort law.[102]   However, Plaintiff's *Opposition* addresses her abuse of process claim only in the context of state tort law.   Thus, the Court will not consider Plaintiff's abuse of process claim as a federal constitutional claim brought under Section 1983.

2.    Absolute Immunity – Individual Capacity Claims

The United States Supreme Court has adopted a "functional approach" to the question of absolute immunity, one that looks to "the nature of the function performed, not the identity of the actor who performed it."[103]   A prosecutor is immune for initiating and pursuing a criminal prosecution.   Specifically, a prosecutor is absolutely immune when he[104] acts in his "role as advocate for the State,"[105] or when his conduct is "intimately associated with the judicial phase of the criminal process."[106]   However, a prosecutor does not enjoy absolute immunity for acts of investigation or administration.[107]   Even if a prosecutor fails to show absolute immunity for a given activity, he may still show qualified immunity.[108]

An official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.[109]   "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute

---

[102] Rec. Doc. No. 37, p. 22, ¶¶ 127-132. Plaintiff's Fourth Cause of Action alleges Abuse of Process under Section 1983; however, in ¶ 128, she alleged that Defendants are liable for "the state tort of abuse of process."  In ¶ 129, Plaintiff alleges that the Defendants acted in a manner violative of her "state and federal constitutional rights."

[103] *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976).

[104] The male pronoun will be used herein for convenience.

[105] *Burns v. Reed*, 500 U.S. 478, 491, 111 S.Ct. 1934, 1942, 114 L.Ed.2d 547 (1991) (internal quotation marks omitted).

[106] *Burns*, 500 U.S. at 492, 111 S.Ct. at 1942 (internal quotation marks omitted).

[107] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993).

[108] *Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615-16.

[109] *Buckley*, 509 U.S. at 269, 113 S.Ct. at 2613, 125 L.Ed.2d 209 (1993).

51793

immunity."[110]  A prosecutor is not absolutely immune for acting in the role of an investigator or policeman if, in so acting, he deprives a plaintiff of rights under the Constitution or federal laws.[111]  "[A] prosecutor who assists, directs or otherwise participates with, the police in obtaining evidence prior to an indictment undoubtedly is functioning more in his investigative capacity than in his quasi-judicial capacities of deciding which suits to bring and … conducting them in court," and is thus not  entitled to absolute immunity.[112]

Here, Plaintiff challenges the DA's investigatory and administrative functions both prior to the grand jury hearing and at the grand jury hearing.  Plaintiff characterizes the DA's pre-grand jury conduct as investigatory, which she claims removes the shield of absolute immunity.  Specifically, Plaintiff's alleged pre-grand jury functions of the DA are: failing to request the rape kit and consider it in the investigation;[113] the hand-written notes on the police report;[114] and failing to meet with Plaintiff and other corroborating witnesses.[115]  Plaintiff also alleges that the DA failed to call investigators and medical personnel as witnesses at the grand jury hearing.[116]

---

[110] *Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615 (citing *Burns v. Reed*, 500 U.S. at 494-96, 111 S.Ct. at 1943-44, 114 L.Ed.2d 547 (1991)).

[111] *Hart v. O'Brien*, 127 F.3d 424, 439 (5th Cir. 1997) (citing *Joseph v. Patterson*, 795 F.2d 549, 556 (6th Cir. 1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987)).  *See* ¶ 25 of Plaintiff's *First Amended Complaint* alleging that it is "the cops" who usually "get the [rape] kit", suggesting and supporting that this is an investigative function.

[112] *Hart,* 127 F.3d at 440 (citing *Marrero v. City of Hialeah*, 625 F.2d 499, 505 (5th Cir. 1980) (citation and internal quotations omitted)) *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981).  *See also, Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) and *Spivey v. Robertson,* 197 F.3d 772 (5th Cir. 1999) (which altered the timing of when absolute immunity may apply; the analysis focusing on whether the prosecutor is acting as an advocate).  *See also Lucas v. Parish of Jefferson*, 999 F.Supp. 839 (E.D. La. Mar. 31, 1998) (for a complete history and evolution of absolute immunity).

[113] Rec. Doc. No. 37, p. 3, ¶ 9.

[114] Rec. Doc. No. 37, p. 3, ¶ 10.

[115] Rec. Doc. No. 37, p. 3, ¶ 11.

[116] Rec. Doc. No. 37, p. 3, ¶¶ 12-13.

51793

Relying upon *Imbler v. Pachtman*,[117] the DA argues that he is clearly protected from civil suit by the doctrine of absolute immunity because he was at all times acting in his role as the state's advocate in the prosecution of Boeker.[118] The DA cites numerous cases post-*Imbler* wherein district attorneys were found to be absolutely immune from civil suit.[119] The DA emphasized those instances where absolute immunity was granted even where the actions at issue were questionable.[120]

The plaintiff in *Buckley v. Fitzsimmons* alleged that the defendants, state prosecutors who had participated in the early stages of the sheriff's department's investigation, entered into a pre-indictment conspiracy with the sheriff's deputies to create false evidence linking a boot owned by the plaintiff with a bootprint left at a murder scene.[121] The defendants asserted the defense of absolute immunity, but the Supreme Court determined that the defendants had failed to carry their burden of "establishing that they were functioning as 'advocates' when they were endeavoring to determine whether the bootprint at the scene of the crime had been made by [the plaintiff's] foot." In reaching this conclusion, the Court recognized that, although "'the duties of a prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,' [t]here is a difference between an advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand,

---

[117] 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).
[118] Rec. Doc. No. 57-1, p. 10.
[119] *Id.*
[120] *Id.* at pp. 10-12 ("[A]bsolute immunity shelters prosecutors even if when they act 'maliciously, wantonly or negligently'").
[121] *Buckley*, 509 U.S. at 262-72, 113 S.Ct. at 2610-15, 125 L.Ed.2d 209 (1993).
51793

and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand."[122]

The Supreme Court also noted in *Buckley* that the conduct of the prosecutors was "during the period before they convened a special grand jury," finding that the prosecutors' mission "at that time was entirely investigative in character."[123]   The Court stated that it was "well after" the alleged fabrication of evidence that the grand jury was empaneled.[124]   Finally, the Court characterized the timing of the conduct in question as occurring before the prosecutors could properly claim to be acting as advocates.[125]   Thus, the Court held the defendants were not shielded by absolute immunity. [126]

The DA also relies on *Charles v. Greenberg,* an Eastern District of Louisiana case, where the testing of a rape kit was at issue.[127]   In *Charles*, the plaintiff was exonerated and released from prison for a 1982 aggravated rape conviction after a DNA test of the rape kit revealed that he was not the perpetrator.  Following his exoneration, the plaintiff

---

[122] *Buckley*, 509 U.S. at 273, 113 S.Ct. at 2615 (quoting *Imbler*, 424 U.S. at 431, n. 33, 96 S.Ct. at 995, n. 33).

[123] *Buckley*, 509 U.S. at 274.

[124] *Buckley*, 509 U.S. at 275.

[125] *Id.*

[126] The Court recognizes that the DA disagreed in his reply memorandum that pre-grand jury activities, such as interviewing witnesses or choosing not to interview witnesses, was an investigatory action that removed the prosecutor from the protection of absolute immunity.  Rec. Doc. No. 74, p. 3.  The DA relied on *Cook v. Houston Post*, 616 F.2d 791 (5th Cir. 1980).  The DA is correct that the Fifth Circuit in *Cook v. Houston Post* stated: "Not all of an advocate's work is done in the courtroom.  For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation."  *Cook,* 616 F.2d at 793.  However, the Court notes that: (1) *Cook* was decided in 1980, approximately 13 years before the Supreme Court decided *Buckley v. Fitzsimmons*; and (2) the *Cook* opinion is ambiguous as to whether the witness interviews occurred before the grand jury hearing or not.  The opinion states that the grand jury investigation had been in progress "several months" before the district attorney was assigned to the case (*Cook*, 616 F.2d at 793), and then stated that the district attorney would have been negligent if he had not interviewed witnesses "before presenting the testimony to the grand jury."  *Cook*, 616 F.2d at 793.  In fact, there was very little analysis of the action at issue and the timing of same to garner a guiding principle and timeline from the Fifth Circuit in the *Cook* opinion.

[127] *Charles v. Greenberg*, 00-958, 2000 WL 1838713 (E.D. La. Dec. 13, 2000).  The Court notes that this is the only "rape kit" case from Louisiana federal courts where immunity was an issue.
51793

filed suit under 42 U.S.C. § 1983 alleging that the prosecutor wrongfully opposed his post-indictment, pre-trial request to test the rape kit. The prosecutor defendants claimed absolute immunity. After setting forth the controlling standards in *Imbler* and *Buckley*, the *Chalres* court noted that the requests to have the rape kit tested were post-indictment, presented in court, and the prosecutors' opposition to these requests was heard in court. This was found to be a part of the prosecutors' "official duties" and "directly attached to the judicial process," thus, absolute immunity attached.[128]

The Court finds the holding in *Charles* inapposite to the facts presently before the Court. The challenges to the testing of the rape kit in *Charles* were not pre-indictment. Rather, the issue was litigated in open court as part of the pre-trial evidentiary proceedings following indictment. In *Charles*, the defendant's motion to test the rape kit was an effort to perpetuate exculpatory trial evidence. A prosecutor's in-court advocacy in opposing a request to test a rape kit is part of his/her prosecutorial duties. This is markedly different from the allegations presented herein which involve purported investigative omissions that occurred before the grand jury convened. Taking the allegations as true for purposes of this motion, the Court finds these acts and/or omissions were related to investigation as opposed to advocacy and thus not cloaked by absolute immunity.

The Court finds that the DA's alleged conduct in failing to request, obtain, and examine the rape kit; making notes on the police report; and failing to interview the Plaintiff prior to the grand jury hearing[129] were investigative functions for which absolute immunity

---

[128] *Charles*, at *2.
[129] Rec. Doc. No. 37, p. 3, ¶¶ 9-11.
51793

does not apply. On the other hand, the alleged failure to call specific witnesses before the grand jury[130] is an advocacy or prosecutorial function for the which the DA is absolutely immune. Thus, the DA is shielded by absolute prosecutorial immunity for the prosecutorial function of determining how to conduct the grand jury hearing. Accordingly, the DA's *Motion to Dismiss* individual capacity claims brought against him based on absolute immunity is granted as to his prosecutorial functions and denied as to his alleged investigative conduct.

3. Qualified Immunity – Individual Capacity Claims

As discussed above, Plaintiff failed to address the DA's individual liability under the Equal Protection Clause, the only viable federal constitutional claim asserted, in her *Opposition* memoranda, although she presented argument on this issue at the oral argument.[131] Plaintiff's only *Opposition* response to the DA's assertion of qualified immunity was based on her Due Process/access to the Courts claim, which the Court has held is not a viable constitutional violation under the facts alleged.

Fundamental fairness requires that the Plaintiff be permitted leave to conform her *Opposition* pleading to the oral arguments presented. Accordingly, because Plaintiff is hereby ordered to submit a Rule 7(a) Response to address the DA's individual capacity liability under the Equal Protection Clause and respond to his assertion of the defense of qualified immunity under the deadlines set forth below.

---

[130] Rec. Doc. No. 37, p. 3, ¶¶ 12-13.
[131] Rec. Doc. Nos. 70 & 71.
51793

4.    <u>Official Capacity Claims</u>

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[132] Accordingly, the claims against the DA in his official capacity are, in effect, claims against the municipal entity he represents, which is the West Feliciana Parish District Attorney's Office.[133]  A plaintiff asserting a Section 1983 claim against a municipal official in his official capacity or a Section 1983 claim against a municipality "must show that the municipality has a policy or custom that caused his injury."[134]  To establish an "official policy," a plaintiff must allege either of the following:

1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or

2.    A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[135]

To state a claim for municipal liability, the policymaker must have final policymaking authority.[136]  "[W]hether a particular official has final policymaking authority is a question of *state law.*"[137]  Moreover, "each and any policy which allegedly caused

---

[132] *Monell v. New York City Dep't of Soc. Serv, of City of New York*, 436 U.S. 658, 691 n. 55 (1978).
[133] *Graham,* 473 U.S. at 165; *see also Bellard v. Gautreaux*, No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) amended in part, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), *affirmed,* 675 F.3d 454 (5th Cir. 2012) *and affirmed,* 675 F.3d 454 (5th Cir. 2012).
[134] *Parm v. Shumate,* 513 F.3d 135, 142 (5th Cir. 2007).
[135] *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984).
[136] *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).
[137] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotations omitted) (emphasis in original).
51793

constitutional violations must be specifically identified by a plaintiff" for the necessary determination to be made on the policy's relative constitutionality.[138]

Although "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity,"[139] absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[140] A municipality cannot be held liable under Section 1983 for the tortious behavior of its employees under a theory of *respondeat superior.*[141] "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[142] However, a plaintiff may establish a policy or custom based on isolated decisions made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.[143]

To state a claim, plaintiffs "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation."[144] Liability for failure to promulgate a policy requires that the defendant acted with deliberate indifference.[145] "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a

---

[138] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).
[139] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).
[140] *Id.*
[141] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[142] *Id.*
[143] *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002)(citing *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 124–25, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996)).
[144] *McClure v. Biesenbach*, No. 08–50854, 2009 WL 4666485, at *2 (5th Cir. Dec.9, 2008) (unpublished) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir.1997)).
[145] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

51793

policy will be a deprivation of constitutional rights."[146]  "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'"[147]  A mere showing of generalized risk is insufficient to establish deliberate indifference; rather, the plaintiff must show that a reasonable policy maker would conclude that the constitutional deprivation that occurred was a plainly obvious consequence of his decision.[148]

The Supreme Court has expressly prohibited the application of a heightened pleading standard to Section 1983 claims against municipalities.[149]  Rather, a plaintiff need only comply with notice pleading requirements by presenting a "short and plain statement of the claims showing that the pleader is entitled to relief."[150]  While boilerplate allegations of inadequate municipal policies or customs are generally sufficient,[151] a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[152]

The following allegations in Plaintiff's *First Amended Complaint* pertain to Plaintiff's claims asserted against the DA in his official capacity:[153]

> 22. On information and belief, the West Feliciana Parish District Attorney's Office does not have a policy requiring rape kits and sexual assault

---

[146] *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

[147] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010)(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Brown*, 520 U.S. at 407, 117 S.Ct. 1382)).

[148] *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 411 (1997).

[149] *Jones v. Bock*, 549 U.S. 199, 212–13, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

[150] *Id.*

[151] *See, e.g., Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir.2006); *Ortiz v. Geo Group, Inc.*, No. 07–645, 2008 WL 219564, at *2 (W.D.Tex. Jan.25, 2008); *Jacobs v. Port Neches Police Dept.*, No. 94–767, 1996 WL 363023, at *13–15 (E.D. Tex. June 26, 1996); *DeFrancis v. Bush*, 839 F.Supp. 13, 14 (E.D.Tex.1993).

[152] *Mack*, 461 F.3d at 556 (quoting *Leatherman,* 507 U.S. at 168).

[153] Rec. Doc. No. 37.

51793

examinations to be picked up and reviewed or sent to the state crime lab for testing.

23. On information and belief, at the time of the assaults and through June 2017, the West Feliciana Parish Sheriff's Office did not have a policy requiring rape kits and sexual assault examinations to be picked up and reviewed or sent to the state crime lab for testing.

24. Rape kits and sexual assault examinations are known to be evidentiary linchpins in sexual assault cases and former district attorneys, defense attorneys, and victim's advocates agree that proper investigation always includes review of the rape kit and assault examination. They further agree that departmental protocol in both law enforcement and district attorney's offices should require examination and analysis of the kit or exam. Even in cases where DNA testing will not be determinative of whether an assault occurred.

25. As retired East Baton Rouge assistant district attorney Sue Bernie told reporters, "[i]f there's a rape exam done, I can't imagine not looking at the sexual assault exam." East Baton Rouge Coroner Beau Clark noted that when the cops get the kit can change (from case to case), but they always come get the kit and they're the ones that submit it to the crime lab."

……

41. Defendant **SAMUEL D. D'AQUILLA** is the present District Attorney of the 20th Judicial District, a position he has held since 2002. Defendant D'AQUILLA is sued in his official and personal capacity. Defendant D'AQUILLA directly and in conspiracy with other defendants deprived Plaintiff of her constitutional rights.

….

84. During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Ms. Lefebure's constitutional rights to equal protection, due process, and a property right in her rape kit.

85. Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively.

….

89. At all relevant times, Defendants D'Aquilla and Austin acted individually, officially, and under color of law.

51793

90. Defendants D'Aquilla and Austin knew that Ms. Lefebure had provided evidence of sexual assault and further knew that neither Defendant was taking steps to properly investigate her allegations.

91. Defendants D'Aquilla and Austin had a duty to diligently investigate the allegations and to collect the rape kit, submit it to the crime lab for examination, and review it and the sexual assault examination as part of their own investigation.

92. Defendants D'Aquilla and Austin acting individually and together conspired to and engaged in a course of conduct that deprived Ms. Lefebure of her constitutional property right in her DNA samples and rape kit, her right to seek redress in the courts, and of her rights to equal protection and due process by failing to investigate the accused and failing to pick up, analyze, examine, or submit rape kit and/or sexual assault examination evidence.

93. Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively.

94. With deliberate indifference Defendants D'Aquilla and Austin failed to draft or implement procedures in either the Sheriff's Department or the District Attorney's Office to ensure proper investigation of rape cases and proper review, examination, collection, and handling of rape kits and sexual assault examinations.

95. Defendants D'Aquilla and Austin's deliberate, and willful and wanton conduct created a danger of an increased risk of harm to Plaintiff and other victims of sexual assault, which are disproportionately women, by failing to investigate sexual assault crimes, by fostering an environment whereby perpetrators of sexual assault are allowed to prey on victims without fear of investigation by the West Feliciana Sheriff's Department or District Attorney.

96. On information and belief, Defendant Boeker knew of Defendant D'Aquilla's longstanding refusal to properly investigate sexual assault crimes against women and/or female identified individuals.

97. At all relevant times, Defendants D'Aquilla and Austin's conduct was intentional, under color of law, and motivated by Plaintiff's gender.

98. On information and belief, Defendants have a history of discriminating against women and/or individuals who identify as female. Defendants have failed to investigate or take seriously reports of sexual assault from women and generally treat these allegations with less priority than other crimes not involving sexual assaults against women.

51793

99. Defendants D'Aquilla and Austin, acting individually and collectively, had the duty and ability to prevent the violation of Ms. Lefebure's constitutional rights, but failed to do so. Indeed, their acts lead to the direction violation of Ms. Lefebure's rights.

100. Defendants D'Aquilla and Austin's conduct violated the Fourteenth Amendment's promise of equal protection of the laws and 42 U.S.C. section 1983.

101. As a direct and proximate result of Defendants D'Aquilla and Austin's actions, omissions, policies, practices and customs, Plaintiff was denied the rights afforded to her by the state and federal constitutions.

….

103. A departmental policy established or enacted by either Defendant D'Aquilla or Defendant Austin in their respective municipal organizations requiring collection and examination of rape kits would have prevented plaintiff's injury, and extreme emotional pain and suffering.

….

107. Defendants D'Aquilla and Austin had a duty to diligently investigate the allegations and to collect the rape kit, submit it to the crime lab for examination, and review it as part of their own investigation.

108. With deliberate indifference Defendants D'Aquilla and Austin failed to implement procedures in either the Sheriff's Department or the District Attorney's Office to provide for proper investigation of rape cases and proper review, examination, collection, and handling of rape kits and sexual assault examinations.

….

111. Defendants D'Aquilla and Austin's deliberate indifference and willful and wanton behavior created a danger and increased risk of harm by sexual assault.

112. Defendants D'Aquilla and Austin's conduct violated the Fourteenth Amendment's promise of substantive due process and 42 U.S.C. section 1983.

113. As a direct and proximate result of Defendants D'Aquilla and Austin's actions, omissions, policies, practices and customs, Plaintiff was denied the rights afforded to her by the state and federal constitutions.

51793

114. Defendants violated Plaintiff's civil rights by having an express policy to not collect evidence or rape kits and/or to not investigate when a female or female-identified person makes a rape or sexual assault allegation. This policy, when enforced, caused a constitutional deprivation to Plaintiff. Even if Defendants' conduct did not rise to the level of an express policy, the practice of failing to properly collect and review rape kits and/or the practice of failing to investigate sexual assault allegations by women was so widespread and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

115. Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively. Plaintiff's constitutional injuries inflicted by Defendants were caused by individual's with final policymaking authority in West Feliciana Parish, the West Feliciana Parish Sheriff's Office, and/or the West Feliciana Parish District Attorney's Office.

### a. Eleventh Amendment Sovereign Immunity

Notwithstanding the DA's strained attempt at arguing that an official capacity claim against him is barred by Eleventh Amendment sovereign immunity,[154] the Fifth Circuit has held to the contrary in several cases. The law is well-settled that district attorney offices in Louisiana are local government entities and thus not entitled to Eleventh Amendment sovereign immunity.[155]

### b. Absolute Immunity

The Court finds that the DA is likewise not immune from an official capacity suit based on the defense of absolute prosecutorial immunity. In *Burge v. Parish of St. Tammany*, the Fifth Circuit held that "the district court erred in granting summary judgment for the District Attorney in his official capacity on the basis of his absolute prosecutorial

---

[154] *See* Rec. Doc. No. 57-1 fn 11 (acknowledging Fifth Circuit jurisprudence foreclosing the DA's argument).
[155] *See Kentucky v. Graham*, 473 U.S. 159, 167,(1985); *Burge*, 187 F.3d at 466; *Hudson v. City of New Orleans*, 174 F .3d 677, 691 (5th Cir. 1999). *See also Spikes v. Phelps*, 131 F. App'x 47, 49 (5th Cir. 2005) ("based on Louisiana law, ... a parish district attorney is not entitled to Eleventh Amendment immunity").
51793

immunity because that form of personal or individual immunity is not available in an official capacity suit."[156]  The *Burge* court held:

> We conclude that the District Attorney is not entitled to have the official capacity suit dismissed for either of the grounds used by the district court. Instead, the **crucial issues appear to be whether the District Attorney failed to establish adequate policies, procedures or regulations** to ensure adequate training and supervision of employees with respect to the government's *Brady* responsibility; if so, whether the need to control the agents of the government was so obvious, and the inadequacy of the existing practice so likely to result in the violation of constitutional rights, that the District Attorney can reasonably be said to have been deliberately indifferent to the need; and, if so, whether the District Attorney's deliberate indifference and failure to establish such policies, procedures, or regulations caused Burge's constitutional injury.

> Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent. *Monell*, 436 U.S. at 691 n. 55, 98 S.Ct. 2018. **Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983.** *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).[157]

In *Burrell v. Adkins*, the plaintiffs brought a Section 1983 lawsuit against the former and current District Attorneys of Union Parish, claiming that the District Attorneys had, *inter alia*, caused the plaintiffs to be falsely arrested and imprisoned, deliberately withheld *Brady* material, and maintained an official policy "designed to facilitate and condone his office's non-disclosure of *Brady* material to criminal defendants, in violation of plaintiffs' constitutional rights in this case."[158]  The court explained the standard applicable to the plaintiffs' *Monell* claims:

> Municipalities cannot be held liable for constitutional torts under Section 1983 on a *respondeat superior* theory, but they can be held liable when

---

[156] 187 F.3d 452, 467 (5th Cir. 1999)(citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).
[157] *Id.* at 466-67 (emphasis added).
[158] 2007 WL 4699169, at *4 (W.D. La. Oct. 23, 2007).
51793

execution of a government's policy or custom, whether made by its lawmakers or **by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.** *Burge*, 187 F.3d at 471, citing *Monell*, 436 U.S. at 689, 98 S.Ct. at 2018. Thus, a plaintiff seeking to impose liability on a municipality under Section 1983 is required to identify a municipal policy, or custom, that caused the plaintiff's injury. *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997). The "official policy" requirement may be proven in at least three different ways: (1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy, (2) where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. *Burge*, 187 F.3d at 471, and cases cited therein.

Relying heavily on *Burge*, the court stated that "[a] district attorney is the independent and final official policymaker for all administrative and prosecutorial functions of his office."[159] The court noted that "the only issue before the court is whether the *Brady* violations were committed pursuant to 'official policy.'"[160] The court ultimately found that:

Since former District Attorney Adkins was found to have been directly involved in the alleged *Brady* violations, plaintiffs have satisfied the requirements of *Monell* by proving that actions of the policy maker, which represented official policy, violated their constitutional rights. Thus, the real party in interest in this suit against Adkins and Levy in their official capacities, the office of the District Attorney of Union Parish (currently held by Levy), is liable to plaintiffs.[161]

Although the *Burrell* decision was addressing a case at the summary judgment stage, the holding demonstrates that district attorneys are not absolutely immune from *Monell* liability where it is found that a policy or custom directly implemented by a district

---

[159] *Id.* at *5 (citing *Burge*, 187 F.3d at 469).
[160] *Id.* at *10.
[161] *Id.*
51793

attorney caused constitutional injury. Accordingly, the DA is not shielded from *Monell* liability by absolute prosecutorial immunity. The Court now turns to a discussion of the elements of Plaintiff's *Monell* claims.

### c. Policymaker

It is undisputed that DA D'Aquilla is a policymaker. Under Louisiana state law, a district attorney "shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury."[162] Accordingly, DA D'Aquilla is the policymaker with final policymaking authority for the West Feliciana Parish District Attorney's Office.

### d. Official Custom or Policy

Plaintiff must plead sufficient facts to establish the existence of an official policy or custom. An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself; and (3) even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker ... can reasonably be said to have been deliberately indifferent to the need.'"[163] From the Plaintiff's *Amended Complaint*, it appears her allegations fit within the second and third categories.

---

[162] La. Const. Art. V, § 26; *see also* La. Rev. Stat. § 16:1.
[163] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 417-19, 117 S. Ct. 1382, 1395 (1997) (Souter, J., dissenting), (quoting *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205 (1989)). 51793

Specifically, Plaintiff alleges that, on information and belief, the West Feliciana Parish District Attorney's Office does not currently, nor did it at the time of the alleged assaults and through June 2017, have a policy requiring rape kits and sexual assault examinations to be picked up and reviewed or sent to the state crime lab for testing.[164] Plaintiff further alleges that, with deliberate indifference, DA D'Aquilla failed to draft or implement procedures in the District Attorney's Office to ensure proper investigation of rape cases and proper review, examination, collection, and handling of rape kits and sexual assault examinations.[165]   Plaintiff also alleges that, on information and belief, Defendant Boeker knew of DA D'Aquilla's "long-standing refusal to properly investigate sexual assault crimes against women and/or female identified individuals,"[166] and Defendants "have a history of discriminating against women and/or individuals who identify as female. Defendants have failed to investigate or take seriously reports of sexual assault from women and generally treat these allegations with less priority than other crimes not involving sexual assaults against women."[167]   Finally, Plaintiff alleges that "[a] departmental policy established or enacted by … Defendant D'Aquilla … in their respective municipal organizations requiring collection and examination of rape kits would have prevented plaintiff's injury, and extreme emotional pain and suffering."[168]

Additionally, Plaintiff has alleged that DA D'Aquilla directly participated in the allegedly unconstitutional conduct.  Plaintiff alleges that:  the DA refused to examine or

---

[164] Rec. Doc. No. 37, ¶¶ 22 & 23.
[165] *Id.* at ¶ 94.
[166] *Id.* at ¶ 96.
[167] *Id.* at ¶ 98.
[168] *Id.* at ¶ 103.
51793

pick up her rape kit;[169] his mark-up of the police report highlighted only Plaintiff's possible discrepancies and cast doubt only on Plaintiff;[170] neither the DA nor any member of his staff met with Plaintiff in person prior to the grand jury hearing, nor did they ever speak to her about the alleged assaults;[171] at the grand jury hearing, the DA did not call the police officers who investigated the case or the nurse who conducted Plaintiff's sexual exam, and no expert from the coroner's office was called to testify about the rape kit;[172] the DA attempted to proceed to the grandy jury hearing without Plaintiff's testimony after he reneged on a promise to her lawyer that he would give her a continuance to prepare;[173] after a no true bill, the DA told reporters that the issue in the case was credibility and there were no photos or witness cooperation;[174] the DA told reporters he did not pick up or examine the rape kit because it was unnecessary because it would not speak to the issue of consent;[175] the DA told reporters that Defendant Boeker claimed it was consensual but "kind of rough" sex, a simple credibility call;[176] days after a news station reported that Plaintiff's rape kit was never retrieved or examined, the DA told the Advocate that his office had called the coroner's office and asked for the rape kit multiple times;[177] the DA told reporters that he presents everything in his file every time there is a grand jury;[178] and the DA met with Boeker and his attorney, who is related to the DA, after his arrest[179]

---

[169] *Id.* at ¶ 9.
[170] *Id.* at ¶ 10.
[171] *Id.* at ¶ 11.
[172] *Id.* at ¶ 12.
[173] *Id.* at ¶ 14.
[174] *Id.* at ¶ 17.
[175] *Id.* at ¶ 20.
[176] *Id.* at ¶ 21.
[177] *Id.* at ¶ 26.
[178] *Id.* at ¶ 27.
[179] *Id.* at ¶ 77, 80.

51793

and conspired with other Defendants, including Plaintiff's alleged rapist, to ensure that Boeker would not be investigated for rape.[180]

These very specific factual allegations dispel the DA's argument that Plaintiff's allegations are conclusory or boilerplate. The Court must accept Plaintiff's allegations as true for the purpose of this motion, and Plaintiff's factual allegations are specific and, in many instances, purport to be quotes given to the media. Plaintiff is not required to prove her case at the Rule 12(b)(6) stage, and the Court finds that her claim that it was policy or customary practice for the DA to fail to investigate or give credence to reports of sexual assault by women is plausible under the facts pled. Further, the facts pled, if proven, would constitute deliberate indifference rather than mere negligence on the part of the DA.

### e.    Moving Force Behind Constitutional Violations

The DA maintains that Plaintiff has failed to state a claim because she has not alleged a constitutional violation. Plaintiff claims that the DA's conduct and policy violated her constitutional rights to equal protection and due process/access to the courts. The Court has determined as set forth above that Plaintiff has alleged a constitutional violation under the Equal Protection Clause.

### f.    Equal Protection Clause[181]

Plaintiff alleges that the DA's

deliberate, willful, and wanton conduct created a danger of an increased risk of harm to Plaintiff and other victims of sexual assault, which are disproportionately women, by failing to investigate sexual assault crimes, by fostering an environment whereby perpetrators of sexual assault are

---

[180] *Id.* at ¶ 82.
[181] The Court adopts by reference the discussion and analysis set forth above in Section II.D.1.a of this *Ruling*.
51793

allowed to prey on victims without fear of investigation by the West Feliciana Sheriff's Department or District Attorney.[182]

Plaintiff further alleges, on information and belief, that Defendant Boeker knew of the DA's "longstanding refusal to properly investigate sexual assault crimes against women and/or female identified individuals."[183] Plaintiff claims that Defendants' conduct was purposeful and motivated by Plaintiff's gender.[184] Plaintiff also alleges, on information and belief, that Defendants have a history of discriminating against women and/or individuals who identify as female in that Defendants have failed to investigate or take seriously reports of sexual assault from women and generally treat these allegations with less priority than other crimes not involving sexual assaults against women.[185] Finally, Plaintiff claims that Defendants violated Plaintiff's civil rights

> by having an express policy to not collect evidence or rape kits and/or to not investigate when a female or female-identified person makes a rape or sexual assault allegation. This policy, when enforced, caused a constitutional deprivation to Plaintiff. Even if Defendants' conduct did not rise to the level of an express policy, the practice of failing to properly collect and review rape kits and/or the practice of failing to investigate sexual assault allegations by women was so widespread and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.[186]

As set forth above, to sustain a gender-based equal protection challenge, a plaintiff must show "(1) the existence of a policy, practice, or custom of law enforcement to provide less protection to victims of domestic assault than to victims of other assaults; (2) that

---

[182] Rec. Doc. No. 37, ¶ 95.
[183] *Id.* at ¶ 96.
[184] *Id.* at ¶ 97.
[185] *Id.* at ¶ 98.
[186] *Id.* at ¶ 114.

51793

discrimination against women was a motivating factor; and (3) that the plaintiff was injured by the policy, custom or practice."[187]   Plaintiff allegations as detailed above satisfy this three-part test.   However, the Court finds that Plaintiff has failed to allege a "class of one" cause of action, which she pleads in the alternative.   To state a class of one equal protection claim, a plaintiff must offer a comparator she contends is similarly situated, but treated more favorably for no rational purpose.[188]   Plaintiff has not alleged a similarly situated comparator.   In accordance with the Court's statements at the oral argument, Plaintiff will be granted leave to amend on this issue.

Accordingly, the DA's *Motion to Dismiss* official capacity claims asserted against him is DENIED as to Plaintiff's Equal Protection claim but is GRANTED as to all other official capacity claims and Plaintiff's class of one Equal Protection claim, subject to leave to amend.

### E.     42 U.S.C. §§ 1983 & 1985 (2) and (3) Civil Conspiracy Claims

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[189]   Regarding the first element: "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act."[190] "Mere conclusory allegations of

---

[187] *Shipp,* 234 F.3d at 914.

[188] *Monumental Task Comm., Inc. v. Foxx*, No. 15-6905, 2016 WL 5780194, at *3 (E.D. La. Oct. 4, 2016) (citing *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007))(emphasis added).

[189] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990); *see also Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) ("To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994)).

[190] *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (Rubin, J.).

51793

conspiracy cannot, absent reference to material facts, survive a motion to dismiss."[191] "[M]ore than a blanket of accusation is necessary to support a § 1983 claim."[192] Plaintiff must make "specific allegation[s] of fact tending to show a prior agreement has been made."[193]

Nevertheless, a Section 1983 conspiracy "claim need not [meet] a 'probability requirement at the pleading stage; [plausibility] simply calls for enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'"[194] Plaintiff's "facts, when 'placed in a context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'"[195]

As to the second element, "[r]egardless of whether or not [a defendant's] actions alone actually caused a constitutional violation, liability can still be imposed on him through his alleged membership in the conspiracy."[196]  That is, "[a] conspiracy allegation under § 1983 allows a plaintiff to 'impose liability on all of the defendants without regard to who committed the particular act.'"[197]

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'"[198]  For example, "in a case alleging both Fourth Amendment violations

---

[191] *Id.* (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)).
[192] *Id.* (citations omitted).
[193] *See id.* at 1023–24.
[194] *Jabary*, 547 F. App'x at 610 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).
[195] *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).
[196] *Latiolais v. Cravins*, 484 F. App'x 983, 991 (5th Cir. 2012) (citing *Hale v. Townley*, 45 F.3d 914, 920–21 (5th Cir.1995)).
[197] *Jabary*, 547 F. App'x at 610 (citing *Hale*, 45 F.3d at 920).
[198] *Hale*, 45 F.3d at 920 (quoting *Pfannstiel*, 918 F.2d at 1187).
51793

and a § 1983 conspiracy, the proper order of review is first whether Plaintiffs have alleged a constitutional violation that is objectively unreasonable in light of clearly established Fourth Amendment law, *and only if that is the case* should the court then consider whether Plaintiffs have alleged a conspiracy."[199]   Thus, in *Hale*, the Fifth Circuit found that, because all of the alleged conspirators were entitled to qualified immunity on plaintiff's First Amendment claim, the conspiracy claim was not actionable.[200]

The Court finds that Plaintiff has alleged a viable constitutional violation of the Equal Protection Clause; thus, the Court must consider whether Plaintiff has sufficiently pled facts to state a claim for a Section 1983 civil conspiracy claim.

Plaintiff has also asserted a civil conspiracy claim under 42 U.S.C. § 1985(2) and (3).  "Section 1985 prohibits a conspiracy to interfere with civil rights."[201]  In order to state a 42 U.S.C. § 1985 claim, a plaintiff must allege the following: "(1) a conspiracy by the defendants, (2) with a purpose of depriving the plaintiff of equal protection of the laws or equal privileges and immunities under the law, (3) a purposeful intent to discriminate, (4) action by the defendants under color of state law or authority, and (5) injury to the person or property of the plaintiff or his deprivation of a right or privilege as a citizen of the United States resulting from actions in furtherance of the conspiracy."[202]  Additionally, the plaintiff must assert "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[203]

---

[199] *Morrow v. Washington*, 672 F. App'x 351, 355 (5th Cir. 2016) (emphasis in original).
[200] *Hale*, 45 F.3d at 921.
[201] *Bishop v. J.O. Wyatt Pharm.*, 2015 WL 4997890, at *7 (N.D. Tex. Aug. 21, 2015).
[202] *Id.* (citing *Granville v. Hunt,* 411 F.2d 9, 11 (5th Cir. 1969)).
[203] *Suttles v. U.S. Postal Service*, 927 F.Supp. 990, 1001 (S.D. Tex. 1996)(quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).
51793

The district court for the Northern District of Texas explained how the Fifth Circuit and the Supreme Court have interpreted 42 U.S.C. § 1985(2) and (3):

> The first clause of § 1985(2) "prohibits conspiracies to deter witnesses from attending court or testifying, punishing witnesses who have so attended or testified, or injure jurors." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 n. 6 (5th Cir. 2010). The clause has been read as protecting any party, witness, or juror from intimidation regardless of any racial animus on the part of the defendant. *Montoya*, 614 F.3d at 149 (citing *Kush v. Rutledge,* 460 U.S. 719, 723-27, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The second clause of § 1985(2) "prohibits conspiracies to deny any citizen equal protection of the laws or injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant*, 597 F.3d at 687. Since the equal protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second part of § 1985(2). *See Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986) (citing *Klimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir. 1981) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)).[204]

In this case, Plaintiff relies on the second clause of § 1985(2) and (3). The DA contends that Plaintiff has failed to state viable 42 U.S.C. § 1985(2) and (3) conspiracy claims against him. He argues that, "for the same reasons that preclude Plaintiff from having standing," and because "the allegations against D'Aquilla are not sufficient," Plaintiff fails to state a claim upon which relief may be granted.[205]

The Court finds that Plaintiff has alleged sufficient facts to support a claim for civil conspiracy under Sections 1983 and 1985. Plaintiff alleges in detail that the DA and the other named Defendants conspired together or that they were motivated by a class-based animus, *i.e.*, gender. Specifically, Plaintiff alleges:

> From the moment of his arrest, Defendant Boeker was not treated as a suspect in a crime, but instead given preferential treatment by Defendant

---

[204] *Payne v. Universal Recovery, Inc.*, 2011 WL 7415414, at *8 (N.D. Tx. Dec. 7, 2011).
[205] Rec. Doc. No. 57-1, p. 17.
51793

West Feliciana Parish District Attorney Samuel D. D'Aquilla and his office and West Feliciana Parish Sheriff J. Austin Daniel and his office.[206]

Within 24 hours of his arrest, Mr. Boeker's attorney Jerome Cy D'Aquilla – relative of Defendant District Attorney Sam D'Aquilla – secured two bond reductions totaling $77,000.00. Mr. Boeker did not spend a single night in custody and his remaining, reduced bond was paid largely by an unknown source from Ascension Parish.[207]

After his release, Defendant Boeker faced no investigation or scrutiny from the District Attorney or the Sheriff.[208]

Both the District Attorney and the Sheriff refused to examine or pick up Ms. Lefebure's rape kit and sexual assault examination, which showed bruising consistent with trauma.[209]

Defendant D'Aquilla's markup of the police report highlighted only possible discrepancies in Ms. Lefebure's description of the events. His handwritten notes cast only doubt on Ms. Lefebure, with 'drinking' written out and heavily underlined, and the words 'go get the stuff,' 'where are the texts,' and 'NO [*illegible*] plead 5' and 'plead 5th.' None of these phrases were included in the police report itself or Ms. Lefebure's description of the events and Mr. and Mrs. Boeker are the only parties alleged to have been drinking at the time of either assault.[210]

Prior to the grand jury hearing Defendant D'Aquilla did not meet with Ms. Lefebure in person or speak with her about the assaults. He told reporters he was 'uncomfortable' with speaking with her. No one from Defendant D'Aquilla's office or staff met with Ms. Lefebure either.[211]

Defendant D'Aquilla also noted that '[e]very time we have a grand jury, we present everything we have in our file.' If Defendant D'Aquilla's office had retrieved the rape kit as any other prosecutor would have, the photos of the bruising and the exam would have been presented to the grand jury.[212]

Defendant Sheriff Austin admitted to reporters at WBRZ that his office made an error by not picking up Ms. Lefebure's rape kit and exam and that it should have been processed sooner. He told the news station on June 26,

---

[206] Rec. Doc. No. 37, p. 2, ¶ 6.
[207] Rec. Doc. No. 37, p. 2, ¶ 7.
[208] Rec. Doc. No. 37, p. 2, ¶ 8.
[209] Rec. Doc. No. 37, p. 3, ¶ 9.
[210] Rec. Doc. No. 37, p. 3, ¶ 10.
[211] Rec. Doc. No. 37, p. 3, ¶ 11.
[212] Rec. Doc. No. 37, p. 6, ¶ 27.

51793

2017, that he had recently issued a verbal protocol to everyone in his office that rape kits need to be sent to the crime lab when they are collected.[213]

Defendant Sheriff Austin and Defendant District Attorney D'Aquilla did not pick up the rape kit and examination until, at the earliest, March 10, 2017. *See* Exhibit B. This was only days after WBRZ reported that the kit had not been retrieved or tested.[214]

Ms. Lefebure's rape kit did not make it to the state crime lab until six months after her assault and two months after Mr. D'Aquilla refused to his job as a district attorney and investigate and seek the indictment of Defendant Boeker.[215]

Instead of protecting her rights as the victim of a violent crime, the Defendants derided Ms. Lefebure throughout the process, denied her information about and access to victim resources, and violated her rights to equal protection and due process of the law by willfully refusing to do their jobs and instead colluding protect [sic] an alleged rapist from prosecution.[216]

Plaintiff is informed and believes and thereon alleges that each Defendant was at all material times an agent, servant, employee, partner, joint venture, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.[217]

Mr. Boeker's defense counsel was Attorney Jerome Cy D'Aquilla, a relative of the elected District Attorney and Defendant Sam D'Aquilla.[218]

On information and belief, after he was arrested Mr. Boeker met with Defendant D'Aquilla and/or Defendant Austin, and his lawyer and an

---

[213] Rec. Doc. No. 37, p. 6, ¶ 28.
[214] Rec. Doc. No. 37, p. 6, ¶ 29.
[215] Rec. Doc. No. 37, p. 6, ¶ 30.
[216] Rec. Doc. No. 37, p. 7, ¶ 32.
[217] Rec. Doc. No. 37, p. 10, ¶ 47.
[218] Rec. Doc. No. 37, p. 15, ¶ 77.

51793

unknown Warden from the prison to ensure that he was given preferential treatment and not required to stay in jail for any length of time.[219]

During this meeting Defendant Boeker claimed that he and Ms. Lefebure had been having consensual sex and that she was lying. On information and belief, the unknown DOE Warden colluded with Defendant Boeker to corroborate his false claim of a consensual relationship.[220]

During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Mr. Boeker was not investigated for the alleged rapes.[221]

During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Mr. Boeker would not be convicted of the alleged rapes.[222]

During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Ms. Lefebure's constitutional rights to equal protection, due process, and a property right in her rape kit.[223]

Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively.[224]

Finally, Plaintiff re-asserts these allegations in summarizing the supporting allegations for her Third Cause of Action pursuant to 42 U.S.C. §§ 1983 and 1985.[225]

As demonstrated above, Plaintiff's conspiracy allegations contain particular detail, including allegations of specific meetings and agreements in furtherance of the conspiracy and of "long-standing" practices adverse to women and sexual assault victims.

---

[219] Rec. Doc. No. 37, p. 15, ¶ 80.
[220] Rec. Doc. No. 37, p. 15, ¶ 81.
[221] Rec. Doc. No. 37, p. 15, ¶ 82.
[222] Rec. Doc. No. 37, p. 16, ¶ 83.
[223] Rec. Doc. No. 37, p. 16, ¶ 84.
[224] Rec. Doc. No. 37, p. 16, ¶ 85.
[225] Rec. Doc. No. 37, pp. 21-22, ¶¶ 117-126.
51793

Accordingly, the DA's *Motion to Dismiss* Plaintiff's claims under Sections 1983 and 1985 is DENIED.

## F.    State Law Claims

It appears that the only state law claim asserted against the DA is abuse of process.  In Louisiana, "[t]he essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding."[226]   "The precise inquiry involves the misuse of a process already issued whereby a party attempts to obtain some result not proper under the law."[227]  The DA moves to dismiss this claim on the grounds of absolute prosecutorial immunity.[228]

In *Singleton v. Cannizzaro*,[229] the district court for the Eastern District of Louisiana recently addressed the application of *Imbler/Buckley* absolute prosecutorial immunity to state law claims:

> Because determining whether a prosecutor enjoys absolute immunity turns on "the nature of the function performed" by the prosecutor, this Court must analyze the "specific activities that give rise to the cause of action." In other words, absolute immunity attaches to specific conduct, not specific claims.20 If specific conduct is protected by absolute immunity, and that same conduct forms either a crucial foundation for or the entire basis of certain claims, a finding of absolute immunity may well defeat certain claims on a 12(b)(6) motion.[230]

\*   \*   \*

---

[226] *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (citations omitted).
[227] *Id.*
[228] The Court notes that most of the caselaw upon which Defendant relies in seeking immunity from Plaintiff's state law claims concern malicious prosecution claims. Plaintiff is not an alleged perpetrator, criminal defendant, or former criminal defendant; rather, she is the purported victim of an alleged rape and alleged sexual assault.  Therefore, the collection of malicious prosecution cases relied upon by Defendant are not germane to the issue of prosecutorial absolute immunity in this matter.
[229] 372 F.Supp.3d 389 (E.D. La. 2019).
[230] *Id.* at \*3 (citations omitted).

51793

[T]he Louisiana Supreme Court in *Knapper v. Connick* held that prosecutors enjoy absolute immunity against state law claims in addition to the immunity they enjoy from § 1983 claims. The full scope of absolute prosecutorial immunity under Louisiana law is not clear, but the Louisiana Supreme Court in *Knapper* cited heavily to federal law in its decision and adopted the functional approach that federal courts employ when analyzing prosecutorial absolute immunity issues. For this reason, any conduct for which prosecutors enjoy absolute immunity in this case will apply equally to Plaintiffs' federal and state law claims.[231]

As set forth repeatedly above, Plaintiff has alleged detailed facts that, if proven, sufficiently state a claim for abuse of process under Louisiana law. Further, as held above regarding Plaintiff's federal claims, to the extent Plaintiff's state abuse of process claims implicate prosecutorial rather than investigative or administrative conduct, Defendant is entitled to absolute prosecutorial immunity for that conduct. Thus, the DA's *Motion to Dismiss* Plaintiff's state law abuse of process claim is GRANTED in part and DENIED in part. Plaintiff cannot maintain an individual abuse of process cause of action against the DA for conduct that is prosecutorial. The Defendant's motion is denied with respect to an individual capacity abuse of process claim for investigatory and administrative conduct and is also denied as to the abuse of process claims asserted against the Defendant in his official capacity under Louisiana law.

## III.  CONCLUSION

For the reasons stated above, the *Motion to Dismiss*[232] filed by Defendant, Samuel C. D'Aquilla, District Attorney for the 20th Judicial District, is GRANTED in part and DENIED in part as set forth above. Plaintiff's request for leave of court to amend her *Complaint* is GRANTED, a second and final time, and shall be submitted within thirty (30)

---

[231] *Id.* at *4 (citations omitted).
[232] Rec. Doc. No. 57.
51793

days from the date of this *Order*. Plaintiff is also ordered to file a Rule 7(a) Response to the DA's assertion of the defense of qualified immunity as to the remaining individual capacity claims within this same deadline.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>June 25, 2019</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**