# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

PRISCILLA LEFEBURE

VERSUS

BARRETT BOEKER, Assistant Warden
Louisiana State Penitentiary, individually
and in his official capacity, WEST
FELICIANA PARISH, SAMUEL D. D'AQUILLA,
20th Judicial District, individually and in his
official capacity, District Attorney, J. AUSTIN
DANIEL, Sheriff, West Feliciana Parish,
INSURANCE CO. DOES 1-5, DOES 6-20

CIVIL ACTION

17-1791-SDD-EWD

## RULING AND ORDER

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Barrett Boeker, individually and in his official capacity as Assistant Warden for the Louisiana State Penitentiary ("Defendant" or "Boeker"), pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, *Motion for More Definite Statement* pursuant to Rule 12(e). Plaintiff, Priscilla Lefebure ("Plaintiff" or "Lefebure"), filed an *Opposition*[2] to this motion. The Court heard Oral Argument on this motion on March 25, 2019, and the Court granted in part and denied in part Boeker's motion, with detailed written reasons to be assigned.[3] These reasons are assigned below.[4]

---

[1] Rec. Doc. No. 51.
[2] Rec. Doc. No. 71.
[3] Rec. Doc. No. 81. The Court also reserved the right to "reconsider, modify, and/or supplement the oral reasons" assigned from the bench.
[4] The Court previously rendered a *Ruling* granting in part and denying in part the *Motion to Dismiss* of co-Defendant District Attorney Samuel C. D'Aquilla. See Rec. Doc. No. 82. The Court adopts by reference all relevant factual background, reasoning and analysis where applicable.
Document Number: 50764

## I.    BACKGROUND

Plaintiff filed a *Complaint*[5] and *First Amended Complaint*[6] seeking relief under 42 U.S.C. § 1983 and § 1985 and under the laws of Louisiana against Barrett Boeker, Assistant Warden Louisiana State Penitentiary, individually and in his official capacity; Samuel C. D'Aquilla, District Attorney for the 20th Judicial District, individually and in his official capacity ("the DA"); J. Austin Daniel, Sheriff, West Feliciana Parish ("Sheriff Daniel"); and various unknown insurance companies and unknown defendants.

Plaintiff claims that Boeker raped her on December 1, 2016 at his home on the grounds of the Louisiana State Penitentiary.[7]  Plaintiff further claims that Boeker sexually assaulted her a second time at his home on December 3, 2016.[8]  Subsequent to these alleged attacks, Plaintiff had a rape kit administered and completed on December 8, 2016 at Woman's Hospital in Baton Rouge.[9]  Plaintiff alleges that the report on the rape kit noted bruising in the pattern of fingers and hand prints and a red and irritated cervix. Photographs were also taken.[10]  Plaintiff pleads the facts and circumstances of the alleged rape and sexual assault, the rape kit findings, and her alleged damages in great detail in her *Complaint* and *First Amended Complaint*.[11]

Boeker was arrested for second degree rape on December 20, 2016; however, he was never indicted or convicted.[12]  Plaintiff alleges she was denied equal protection and due process under the law by the Defendants' collective conduct, specifically, the failure

---

[5] Rec. Doc. No. 1.
[6] Rec. Doc. No. 37.
[7] Rec. Doc. No. 37, p. 1, ¶ 1.
[8] Rec. Doc. No. 37, p. 1, ¶ 2.
[9] Rec. Doc. No. 37, p. 2, ¶ 3.
[10] Rec. Doc. No. 37, p. 2, ¶ 4.
[11] Rec. Doc. No. 37, pp. 1-7 and 10-16.
[12] Rec. Doc. No. 37, p. 2, ¶ 5.
Document Number: 50764

of the DA and Sheriff Daniel to investigate the alleged crimes and obtain the rape kit, their disproportionate treatment of women and sexual assault victims, and their conspiracy to protect Boeker.

Plaintiff asserts the following claims against Boeker: civil conspiracy to violate her civil rights pursuant to 42 U.S.C. §§ 1983 and 1985;[13] abuse of process under 42 U.S.C. § 1983;[14] and state law claims of intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), assault, battery, false imprisonment, rape, and sexual battery.[15]

In the motion before this Court, Boeker seeks dismissal of Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Alternatively, Boeker seeks a more definite statement under Rule 12(e). In response, Plaintiff opposes Defendant's motion, arguing that she has sufficiently and specifically pled plausible causes of action adverse to Boeker.

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[16] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] "To

---

[13] Rec. Doc. No. 37, pp. 21-22, ¶¶ 117-126.
[14] Rec. Doc. No. 37, p. 22, ¶¶ 127-132.
[15] Rec. Doc. No. 37, p. 23, ¶¶ 133-136.
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[17] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
Document Number: 50764

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18]  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.[19]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[20]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[21]  However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[23]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[24]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[25]

---

[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 540, 570 (2007)).

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 544 (hereinafter "*Twombly*").

[20] *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*") (quoting *Twombly*, 550 U.S. at 557).

[22] *Id.* (citing *Twombly*, 550 U.S. at 556).

[23] *Id.*

[24] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[25] *Twombly*, 550 U.S. at 555 (quoting *Papassan v. Allain*, 478 U.S. 265, 286 (1986)).

**B.    42 U.S.C. §§1983 & 1985 (2) and (3) Civil Conspiracy Claims**

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[26]  Regarding the first element: "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act."[27] "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss."[28] "[M]ore than a blanket of accusation is necessary to support a § 1983 claim."[29] Plaintiff must make "specific allegation[s] of fact tending to show a prior agreement has been made."[30]

Nevertheless, a Section 1983 conspiracy "claim need not [meet] a 'probability requirement at the pleading stage; [plausibility] simply calls for enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'"[31] Plaintiff's "facts, when 'placed in a context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'"[32]

As to the second element, "[r]egardless of whether or not [a defendant's] actions alone actually caused a constitutional violation, liability can still be imposed on him

---

[26] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990); *see also Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) ("To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994)).
[27] *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (Rubin, J.).
[28] *Id.* (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)).
[29] *Id.* (citations omitted).
[30] *See id.* at 1023–24.
[31] *Jabary*, 547 F. App'x at 610 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).
[32] *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).
Document Number: 50764

through his alleged membership in the conspiracy."[33]  That is, "[a] conspiracy allegation under § 1983 allows a plaintiff to 'impose liability on all of the defendants without regard to who committed the particular act.'"[34]

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'"[35]  For example, "in a case alleging both Fourth Amendment violations and a § 1983 conspiracy, the proper order of review is first whether Plaintiffs have alleged a constitutional violation that is objectively unreasonable in light of clearly established Fourth Amendment law, *and only if that is the case* should the court then consider whether Plaintiffs have alleged a conspiracy."[36]  Thus, in *Hale*, the Fifth Circuit found that, because all of the alleged conspirators were entitled to qualified immunity on plaintiff's First Amendment claim, the conspiracy claim was not actionable.[37]

The Court has previously held that Plaintiff has alleged a viable constitutional violation of the Equal Protection Clause;[38] thus, the Court must consider whether Plaintiff has sufficiently pled facts to state a claim for a Section 1983 civil conspiracy claim.

Plaintiff has also asserted a civil conspiracy claim under 42 U.S.C. § 1985 (2) and (3).  "Section 1985 prohibits a conspiracy to interfere with civil rights."[39]  In order to state a 42 U.S.C. § 1985 claim, a plaintiff must allege the following: "(1) a conspiracy by the

---

[33] *Latiolais v. Cravins*, 484 F. App'x 983, 991 (5th Cir. 2012) (citing *Hale v. Townley*, 45 F.3d 914, 920–21 (5th Cir.1995)).
[34] *Jabary*, 547 F. App'x at 610 (citing *Hale*, 45 F.3d at 920).
[35] *Hale*, 45 F.3d at 920 (quoting *Pfannstiel*, 918 F.2d at 1187).
[36] *Morrow v. Washington*, 672 F. App'x 351, 355 (5th Cir. 2016) (emphasis in original).
[37] *Hale*, 45 F.3d at 921.
[38] Rec. Doc. No. 82.
[39] *Bishop v. J.O. Wyatt Pharm.*, 2015 WL 4997890, at *7 (N.D. Tex. Aug. 21, 2015).
Document Number: 50764

defendants, (2) with a purpose of depriving the plaintiff of equal protection of the laws or equal privileges and immunities under the law, (3) a purposeful intent to discriminate, (4) action by the defendants under color of state law or authority, and (5) injury to the person or property of the plaintiff or his deprivation of a right or privilege as a citizen of the United States resulting from actions in furtherance of the conspiracy."[40]  Additionally, the plaintiff must assert "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[41]

The district court for the Northern District of Texas explained how the Fifth Circuit and the Supreme Court have interpreted 42 U.S.C. § 1985(2) and (3):

> The first clause of § 1985(2) "prohibits conspiracies to deter witnesses from attending court or testifying, punishing witnesses who have so attended or testified, or injure jurors."  *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 n. 6 (5th Cir. 2010).  The clause has been read as protecting any party, witness, or juror from intimidation of any racial animus on the part of the defendant.  *Montoya*, 614 F.3d at 149 (citing *Kush v. Rutledge*, 460 U.S. 719, 723-27, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).  The second clause of § 1985(2) "prohibits conspiracies to deny any citizen equal protection of the laws or injure a citizen for his efforts to ensure the rights of others to equal protection."  *Bryant*, 597 F.3d at 687.  Since the equal protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second part of § 1985(2).  *See Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986) (citing *Klimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir. 1981) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)).[42]

In this case, Plaintiff relies on the second clause of § 1985 (2) and (3).

---

[40] *Id.* (citing *Granville v. Hunt,* 411 F.2d 9, 11 (5th Cir. 1969)).
[41] *Suttles v. U.S. Postal Service*, 927 F.Supp. 990, 1001 (S.D. Tex. 1996)(quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).
[42] *Payne v. Universal Recovery, Inc.*, 2011 WL 7415414, at *8 (N.D. Tx. Dec. 7, 2011).
Document Number: 50764

Boeker brings the following challenges to Plaintiff's conspiracy claims in support of his motion to dismiss.[43]

1. Intracorporate Conspiracy Doctrine

Boeker first invokes the intracorporate conspiracy doctrine, arguing that Plaintiff fails to state a claim for conspiracy because all Defendants are members or actors of the same entity, the State of Louisiana.[44]  Plaintiff opposes Defendant's motion and addresses her claims under Section 1985; however, she does not specifically address the intracorporate conspiracy doctrine.[45]

Pursuant to the intracorporate conspiracy doctrine, "a corporation cannot conspire with itself through its agents or employees when the acts of the agents or employees are within the scope of their employment."[46]  "The intracorporate conspiracy doctrine is equally applicable to governmental entities."[47]  Here, Plaintiff has alleged that Boeker's actions, as well as those of the DA and Sheriff Daniel, occurred while they were using "their official positions and power."[48]  Boeker is an Assistant Warden of the Louisiana State Penitentiary.[49]  It is disputed whether he was acting in this capacity at the time of the alleged criminal acts.  Notably, in invoking the intracorporate conspiracy doctrine, Boeker represented that he is a member of the State of Louisiana as an entity.[50]  The DA

---

[43] Rec. Doc. No. 51-1, pp. 6-14.
[44] Rec. Doc. No. 51-1, pp. 6-7.
[45] Rec. Doc. No. 71.
[46] *Thomas v. Gulotta*, 15-435, 2017 WL 379449, at *10 (M.D. La. Jan. 26, 2017)(citing *Boyd v. Calcasieu Parish Sheriff's Office*, 2013 WL 1857448, at *5 (W.D. La. May 2, 2013)(citing *Suttles*, 927 F.Supp. at 995-1002)).
[47] *Thomas*, at *10 (citing *Suttles,* 927 F.Supp. at 1002) (quoting *Larson v. Miller*, 76 F.3d 1446, 1456 n. 6 (8th Cir. 1996)).
[48] Rec. Doc. No. 37, p. 21, ¶ 124.
[49] Rec. Doc. No. 37, p. 9, ¶ 40.
[50] Rec. Doc. No. 51-1, p. 7.
Document Number: 50764

and Sheriff Daniel are both actors of West Feliciana Parish, although from different departments within the Parish and District.[51]  It appears that, at most, two of the three actors are from the same entity, while Boeker is not.  Boeker argues that all three Defendants are actors of the State of Louisiana.[52]  While the Court agrees that all Defendants are state government employees, the Court notes that the intracorporate conspiracy doctrine is customarily applied to municipalities, departments, and sections within the government, *i.e.*, police departments,[53] parish/county,[54] city.[55]  The present case involves two actors of West Feliciana Parish and one actor of the State of Louisiana.

Further, Plaintiff alleges that an unnamed warden from the Louisiana State Penitentiary participated in the "meeting" where the alleged conspiracy was borne.[56]  Plaintiff also alleges that each Defendant was "acting in concert with one another and other yet-unknown co-conspirators," suggesting that other co-conspirators could be identified after discovery.[57]  Indeed, Boeker acknowledges this unknown alleged co-conspirator in his motion.[58]  Accepting the allegations of the *Complaint* and *First Amended Complaint* as true for the purposes of this motion, the Court finds that the intracorporate conspiracy doctrine does not apply to bar Plaintiff's civil conspiracy claims.

Alternatively, assuming *arguendo* that the intracorporate conspiracy doctrine was applicable, there remain exceptions to the application of this doctrine.  For example,

---

[51] Rec. Doc. No. 37, p. 9, ¶¶ 41-43.
[52] Rec. Doc. No. 51-1, p. 7.
[53] *Thomas, supra.*
[54] *Ezell v. Wells*, 2015 WL 4191751 (N.D. Tex. July 10, 2015).
[55] *Marceaux v. Lafayette City-Parish Consol. Gov't*, 921 F.Supp.2d 605, 643-44 (W.D. La. 2013).
[56] Rec. Doc. No. 37, p. 15, ¶ 82.
[57] Rec. Doc. No. 37, p. 21, ¶ 118.
[58] Rec. Doc. No. 51-1, p. 9 ("The alleged conspiracy is a meeting between the defendants and others not yet known…").
Document Number: 50764

"when the alleged conspirators have an independent stake in achieving the object of the conspiracy," and "whe[n] the alleged conspirators are acting for their own personal purposes,"[59] the intracorporate conspiracy doctrine will not shield defendants from this claim. Plaintiff has alleged that Boeker raped her and sexually assaulted her on two separate occasions.[60] He is further alleged to be an Assistant Warden for the Louisiana State Penitentiary,[61] and he is represented by counsel who is related to the DA.[62] As the alleged perpetrator, Boeker clearly has a personal interest and independent stake in the purported purpose of the alleged conspiracy. Accordingly, the Court would find in the alternative that the "personal interest" exception to the intracorporate conspiracy doctrine applies to Boeker in this instance.

### 2. Qualified Immunity

In an effort to gain dismissal of the conspiracy claims, Boeker attempts to assert a qualified immunity defense on behalf of the other Defendants. Boeker argues that, for Plaintiff to have a viable civil conspiracy claim, the DA and Sheriff Daniel must not be shielded by qualified immunity. Boeker claims that the DA and Sheriff Daniel are shielded by qualified immunity; thus, he maintains there are not two or more actors to satisfy a conspiracy claim. Boeker provides no legal support that he has standing to assert a qualified immunity defenses on behalf of others.

Moreover, whether the DA and/or Sheriff Daniel are shielded by qualified immunity, such immunity, if any, does not shield Boeker's alleged conduct. Immunity from liability

---

[59] *Tow v. Bulmahn*, 2016 WL 1722246, at *28 (E.D. La. Apr. 29, 2016) (citing *Collins v. Bauer*, No. 3:11-CV-00887-B, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012).
[60] Rec. Doc. No. 37.
[61] Rec. Doc. No. 37, p. 9, ¶ 40.
[62] Rec. Doc. No. 37, p. 2, ¶ 7.
Document Number: 50764

means that the state actors are not liable for the claims brought against them, but it does not mean that they could not have engaged in the alleged conspiracy with Boeker for which Boeker may still be liable.[63]

### 3. No Constitutional Violations

Boeker next claims that Plaintiff's civil conspiracy claim against him fails because she has not asserted the underlying necessary constitutional violation. While Boeker is correct that a conspiracy claim is not actionable without an actual violation of section 1983,[64] the Court has already held that Plaintiff has stated a viable claim under the Equal Protection Clause but not under the Due Process Clause. Therefore, this challenge is without merit.

### 4. Facts Alleged Rise Above a Mere Suspicion

This Court is charged with reviewing the allegations on the face of the *Complaint* and *First Amended Complaint*, accepting them as true, and viewing them in the light most favorable to the Plaintiff. Under the applicable heightened pleading requirement, Plaintiff is required to make claims of specific conduct and actions giving rise to a constitutional violation.[65]

Contrary to Plaintiff's assertion, a heightened pleading standard is required to plead a conspiracy. Defendant relies upon *Lynch v. Cannatella* in arguing that a "heightened standard" applies to conspiracy claims. The Fifth Circuit Court of Appeals, in *Lynch v. Cannatella*, stated:

> Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a

---

[63] *Hale v. Townley*, 45 F.3d 914, 920-21 (5th Cir. 1995).
[64] *Hale*, 45 F.3d at 920 (quoting *Pfannstiel*, 918 F.2d at 1187).
[65] *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985).
Document Number: 50764

conspiracy existed are insufficient. In the absence of factual allegations from which a conspiracy to violate … rights can reasonably be inferred, the charges against Lambert amount to no more than an assertion that he was negligent in supervising the conditions under which the [plaintiffs] were detained. Such negligence cannot amount to a violation of whatever due process rights these [plaintiffs] possessed, for, as the Supreme Court observed in *Daniels v. Williams*,[66] 'the Due Process clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.'[67]

Boeker also directs the Court to *Vincent v. City of Sulphur*, which, relying upon *Lynch*, applied the "heightened standard" to a claim of conspiracy:

[A] heightened standard exists for pleading conspiracy under civil rights statutes and plaintiffs 'must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient.'[68]

Considering this heightened pleading standard, Boeker argues that Plaintiff has not pled the "operative facts that show any conspiracy."[69] The entirety of Boeker's argument on this issue is set forth below:

There was no meeting. Defendant Boeker was interrogated after his arrest. Defendant Boeker provided an adequate defense for his actions, a witnesses [sic], other evidence of consent between the parties, and the Plaintiff's arrest record. After further investigation, D'Aquila [sic] used his prosecutorial discretion, for which he has full prosecutorial immunity for [sic], to leave out the rape kit that could provide extreme prejudice to Boeker (against his Constitutional rights of a fair trial and due process) in the grand jury proceedings. Just because the Plaintiff labels an interrogation as a 'meeting to conspire' does not mean that the defendants did so. There was no allegations [sic] of force, intimidation, or threats by Boeker as an act in furtherance of the conspiracy.[70]

In summary, the Court's reading of Boeker's argument that Plaintiff did not sufficiently plead a conspiracy claim under the applicable standard is because: (1) the alleged

---

[66] 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986).
[67] *Lynch,* 810 F.2d at 1369-70 (internal citations omitted).
[68] *Vincent*, at * 2 (citing *Lynch*, 810 F.2d at 1369-70).
[69] Rec. Doc. No. 51-1, p. 13.
[70] Rec. Doc. No. 51-1, pp. 13-14.
Document Number: 50764

"meeting" where the Defendants allegedly conspired was actually an interrogation of Boeker; (2) Boeker was entitled to put on a defense of himself before the grand jury, which he did; (3) the DA "left out the rape kit" because it would "provide extreme prejudice" to Boeker, but Boeker posits that this is acceptable as the DA "has full prosecutorial immunity," and leaving "out the rape kit" was necessary to protect Boeker's constitutional rights; and (4) Boeker did not further the conspiracy with "force, intimidation, or threats."

Plaintiff opposes Boeker's arguments and states only as follows:

> Plaintiff makes clear that Defendants Boeker, D'Aquila [sic], and Daniel conspired and met, each taking acts in furtherance of the conspiracy (such as representations about the investigation and/or agreeing to not investigate, … in an effort to deprive her of the equal protection and due process protections of the law.  She has stated the elements.[71]

Turning to the allegations in the *First Amended Complaint*, the following allegations comprise Plaintiff's civil conspiracy claims against Boeker:

> From the moment of his arrest, Defendant Boeker was not treated as a suspect in a crime, but instead given preferential treatment by Defendant West Feliciana Parish District Attorney Samuel D. D'Aquilla and his office and West Feliciana Parish Sheriff J. Austin Daniel and his office.[72]

> Within 24 hours of his arrest, Mr. Boeker's attorney Jerome Cy D'Aquilla – relative of Defendant District Attorney Sam D'Aquilla – secured two bond reductions totaling $77,000.00.  Mr. Boeker did not spend a single night in custody and his remaining, reduced bond was paid largely by an unknown source from Ascension Parish.[73]

> After his release, Defendant Boeker faced no investigation or scrutiny from the District Attorney or the Sheriff.[74]

---

[71] Rec. Doc. No. 71, p. 9 (citing Rec. Doc. No. 37, ¶¶ 118-126).
[72] Rec. Doc. No. 37, p. 2, ¶ 6.
[73] Rec. Doc. No. 37, p. 2, ¶ 7.
[74] Rec. Doc. No. 37, p. 2, ¶ 8.
Document Number: 50764

Both the District Attorney and the Sheriff refused to examine or pick up Ms. Lefebure's rape kit and sexual assault examination, which showed bruising consistent with trauma.[75]

Defendant D'Aquilla's markup of the police report highlighted only possible discrepancies in Ms. Lefebure's description of the events. His handwritten notes cast only doubt on Ms. Lefebure, with 'drinking' written out and heavily underlined, and the words 'go get the stuff,' 'where are the texts,' and 'NO [*illegible*] plead 5' and 'plead 5th.' None of these phrases were included in the police report itself or Ms. Lefebure's description of the events and Mr. and Mrs. Boeker are the only parties alleged to have been drinking at the time of either assault.[76]

Prior to the grand jury hearing Defendant D'Aquilla did not meet with Ms. Lefebure in person or speak with her about the assaults. He told reporters he was 'uncomfortable' with speaking with her. No one from Defendant D'Aquilla's office or staff met with Ms. Lefebure either.[77]

Defendant D'Aquilla also noted that '[e]very time we have a grand jury, we present everything we have in our file.' If Defendant D'Aquilla's office had retrieved the rape kit as any other prosecutor would have, the photos of the bruising and the exam would have been presented to the grand jury.[78]

Defendant Sheriff Austin admitted to reporters at WBRZ that his office made an error by not picking up Ms. Lefebure's rape kit and exam and that it should have been processed sooner. He told the news station on June 26, 2017, that he had recently issued a verbal protocol to everyone in his office that rape kits need to be sent to the crime lab when they are collected.[79]

Defendant Sheriff Austin and Defendant District Attorney D'Aquilla did not pick up the rape kit and examination until, at the earliest, March 10, 2017. *See* Exhibit B. This was only days after WBRZ reported that the kit had not been retrieved or tested.[80]

Ms. Lefebure's rape kit did not make it to the state crime lab until six months after her assault and two months after Mr. D'Aquilla refused to his job as a district attorney and investigate and seek the indictment of Defendant Boeker.[81]

---

[75] Rec. Doc. No. 37, p. 3, ¶ 9.
[76] Rec. Doc. No. 37, p. 3, ¶ 10.
[77] Rec. Doc. No. 37, p. 3, ¶ 11.
[78] Rec. Doc. No. 37, p. 6, ¶ 27.
[79] Rec. Doc. No. 37, p. 6, ¶ 28.
[80] Rec. Doc. No. 37, p. 6, ¶ 29.
[81] Rec. Doc. No. 37, p. 6, ¶ 30.

Document Number: 50764

Instead of protecting her rights as the victim of a violent crime, the Defendants derided Ms. Lefebure throughout the process, denied her information about and access to victim resources, and violated her rights to equal protection and due process of the law by willfully refusing to do their jobs and instead colluding protect [sic] an alleged rapist from prosecution.[82]

Plaintiff is informed and believes and thereon alleges that each Defendant was at all material times an agent, servant, employee, partner, joint venture, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.[83]

Mr. Boeker's defense counsel was Attorney Jerome Cy D'Aquilla, a relative of the elected District Attorney and Defendant Sam D'Aquilla.[84]

On information and belief, after he was arrested Mr. Boeker met with Defendant D'Aquilla and/or Defendant Austin, and his lawyer and an unknown Warden from the prison to ensure that he was given preferential treatment and not required to stay in jail for any length of time.[85]

During this meeting Defendant Boeker claimed that he and Ms. Lefebure had been having consensual sex and that she was lying. On information and belief, the unknown DOE Warden colluded with Defendant Boeker to corroborate his false claim of a consensual relationship.[86]

During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Mr. Boeker was not investigated for the alleged rapes.[87]

---

[82] Rec. Doc. No. 37, p. 7, ¶ 32.
[83] Rec. Doc. No. 37, p. 10, ¶ 47.
[84] Rec. Doc. No. 37, p. 15, ¶ 77.
[85] Rec. Doc. No. 37, p. 15, ¶ 80.
[86] Rec. Doc. No. 37, p. 15, ¶ 81.
[87] Rec. Doc. No. 37, p. 15, ¶ 82.
Document Number: 50764

During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Mr. Boeker would not be convicted of the alleged rapes.[88]

During this meeting, and at other times since, but before the convening of the grand jury, Defendants Boeker, D'Aquilla, and Austin conspired to ensure that Ms. Lefebure's constitutional rights to equal protection, due process, and a property right in her rape kit.[89]

Defendants D'Aquilla and Austin are the elected and effective policy makers for the District Attorney's Office and the Sheriff's Department, respectively.[90]

Considering the specificity and details set forth in the above allegations, the Court finds that Plaintiff has satisfied the heightened pleading standard and has pled sufficient factual allegations to state a claim of civil conspiracy. Therefore, Boeker's *Motion to Dismiss* Plaintiff's civil conspiracy claim is DENIED.

### C.    Qualified Immunity

Boeker asserts the defense of Qualified Immunity as to his own liability for alleged constitutional violations. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[91] Qualified Immunity applied only to individual capacity claims. "Once a defendant raises the defense of qualified immunity it becomes the plaintiff's burden to show that it does not apply."[92] To satisfy that burden on a motion to dismiss, a plaintiff must allege facts which show that a defendant violated the plaintiff's constitutional rights and that the violation was

---

[88] Rec. Doc. No. 37, p. 16, ¶ 83.
[89] Rec. Doc. No. 37, p. 16, ¶ 84.
[90] Rec. Doc. No. 37, p. 16, ¶ 85.
[91] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[92] *Jones v. Lowndes County, Miss.*, 678 F.3d 344, at 351 (5th Cir. 2012).
Document Number: 50764

"objectively unreasonable in light of clearly established law at the time of the violation."[93]

"Objective reasonableness is gauged by assessing whether at the time and under the circumstances of the challenged conduct 'all reasonable officials' in the same circumstances would have come to the realization that the conduct complained of violated a constitutional provision."[94] "A plaintiff suing a state official claiming qualified immunity is subject to a heightened pleading standard, and to survive a motion to dismiss, he or she must plead facts in detail, which if proven, would defeat the defense."[95]

Erroneously, Boeker asserts that "any action by Boeker in his official capacity is subject to qualified immunity, and therefore he is not personally liable."[96] This is an incorrect statement of the law as qualified immunity is available as a defense only to claims brought against a defendant in his *individual*, not his *official* capacity. Plaintiff responds: "Immunity from personal liability for acts taken in one's official [capacity] does not render Boeker completely devoid of liability. … There is no allegation that those acts were taken in his official capacity and he does not enjoy immunity from them under doctrines affording such immunity under section 1983."[97] Plaintiff is equally confused as to the contours of the qualified immunity defense.

Because both Parties have failed to adequately brief the issue of qualified immunity for the individual capacity claims against Boeker, the *Motion to Dismiss* on the grounds of qualified immunity is DENIED.

---

[93] *Stewart v. Gautreaux*, 2013 WL 2286103, at *2 (M.D. La. May 21, 2013) (citing *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)) (citing *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

[94] *Newman Marchive Partnership v. Hightower*, 735 F.Supp.2d 483, 502 (W.D. La. 2010) (quoting *Pierce v. Smith,* 117 F.3d 866, 871 (5th Cir. 1997)).

[95] *Robinson v. Epps*, 2013 WL 3190225, at *3 (S.D. Miss. June 21, 2013) (citing *Babb v. Dorman*, 33 F.3d 472, 475 n. 5 (5th Cir. 1994)).

[96] Rec. Doc. No. 51-1 at 8.

[97] Rec. Doc. No. 71 at 11.

Document Number: 50764

### D.  Abuse of Process Claim

Plaintiff's Fourth Cause of Action is titled, "42 U.S.C. § 1983 – Abuse of Process (All Defendants)."[98]  Plaintiff avers: "Defendants are jointly, severally, and *in solido* liable to Plaintiff for the state tort of abuse of process, as more fully set forth above."[99] Notwithstanding the nature of Plaintiff's abuse of process claim, Plaintiff failed to address the abuse of process claim in her *Opposition*.  Accordingly, Plaintiff's abuse of process claim against Boeker is deemed abandoned,[100] and Boeker's motion is granted as to this claim.

### E.  State Law Claims

Plaintiff asserts Louisiana state tort claims against Boeker, including intentional infliction of emotional distress, negligent infliction of emotional distress, assault, battery, false imprisonment, rape, and sexual battery.[101]  The Court notes that Louisiana courts have made clear that the proper names of the relevant causes of action in tort are simple "assault" and "battery," even when such torts are sexual in nature.[102]  Thus, the Court

---

[98] Rec. Doc. No. 37, p. 22.

[99] Rec. Doc. No. 37, p. 22, ¶ 128.

[100] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.,* No. 4:11–CV–203–CWR–LRA, 2013 WL 870352, at *2 (S.D. Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).

[101] Rec. Doc. No. 37, p. 23.

[102] *Hernandez v. Theriot*, No. 14-42-SDD-EWD, 2016 WL 4118919, n. 31 (M.D. La. Aug. 1, 2016)(citing *Lawson v. Straus*, 95-1537(La. App.4 Cir. 3/14/96),673 So.2d 223, n. 1).

Document Number: 50764

finds that Plaintiff's claim of battery and sexual battery is redundant, as this is one claim. Likewise, the Court will address Plaintiff's assault claim as sexual in nature.

Boeker contends that these claims should be dismissed as they are prescribed on the face of the *Complaint* and substantively for failure to state a claim upon which relief may be granted. The Court will address these arguments in turn.

### 1. Prescription

Boeker avers that the alleged rape occurred on December 1, 2016, and the alleged sexual assault occurred on December 3, 2016. Plaintiff filed her *Complaint* on December 21, 2017; thus, Boeker argues that a one-year prescriptive period applies to these delictual actions under Louisiana Civil Code article 3492, and Plaintiff's various state torts claims are untimely and should be dismissed.[103]

Plaintiff responds that the applicable prescriptive period for these claims is three years under Louisiana Civil Code article 3496.2, which states:

> A delictual action against a person for any act of sexual assault, as defined in R.S. 46:2184,[104] is subject to a liberative prescription of three years. This prescription commences to run from the day the injury or damage is sustained or the day the victim is notified of the identity of the offender by law enforcement or a judicial agency, whichever is later. This prescriptive period shall be subject to any exception of preemption provided by law.

In *Sherman v. Irwin*,[105] the United States District Court for the Eastern District of Louisiana considered claims of intentional infliction of emotional distress and sexual assault. In that matter, the defendants were police officers who were alleged to have

---

[103] Rec. Doc. No. 51-1 at 16-17.
[104] Louisiana Revised Statute 46:2184 defines "sexual assault" as "any nonconsensual sexual contact including but not limited to any act provided in R.S. 15:541(24) or obscenity (R.S. 14:106)." Louisiana Revised Statute 15:541(24) defines "sex offense" to include rape and sexual battery.
[105] 2019 WL 266314 (E.D. La. Jan. 18, 2019).
Document Number: 50764

raped and sexually assaulted the plaintiff on multiple occasions. The plaintiff asserted claims under both Section 1983 as well as state law. The Eastern District addressed the applicability of the one-year prescriptive period versus the three-year prescriptive period to the state law claims and found that Louisiana Civil Code article 3496.2 applies to claims of sexual assault. The court also stated that it was "reasonable" that any state law claims, such as a claim of intentional infliction of emotional distress, based on an "act of sexual assault," would likewise be subject to the three-year prescriptive period.[106]

Based on the foregoing and the definitions included in Louisiana Rev. Stat. 15:541(24), the Court finds that the three-year prescriptive period applies to Plaintiff's claims of rape, sexual battery, sexual assault, IIED, and NIED. These claims have been timely asserted.

As to Plaintiff's false imprisonment claim, she argues that a two-year prescriptive period applies under Louisiana Civil Code article 3493.010, which states:

> Delictual actions which arise due to damages sustained as a result of an act defined as a crime of violence under Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, except as provided in Article 3496.2, are subject to a liberative prescription of two years. This prescription commences to run from the day injury or damage is sustained.

Because the alleged false imprisonment occurred contemporaneously with an alleged rape and sexual battery, both of which are listed as "crimes of violence" under La. R.S. 14:2(B)(11)&(12), the Court finds that the two-year prescriptive period applies to Plaintiff's false imprisonment claim.

---

[106] *Id.* at *7. *See also, Creighton v. Evergreen Presbyterian Ministries, Inc.,* 214 So.3d 860 (La. Jan. 9, 2017) (where the Louisiana Supreme Court reversed the lower courts' granting of a peremptory exception of prescription regarding claims of battery and remanded the matter to the district court "to allow the parties to fully address the applicability of La. C.C. art. 3493.10".)

Accordingly, Boeker's *Motion to Dismiss* Plaintiff's state law claims is DENIED on the grounds of prescription.

## 2. Failure to State a Claim Upon Which Relief may be Granted

Defendant also argues that Plaintiff fails to "provide sufficient facts" to state a claim for state law torts asserted.[107] The Court will turn to the elements required to be pled to state a claim for the tort claim asserted.

Rape is an intentional tort[108] that "necessarily requires the intentional use of force and/or violence upon the person of another. Although all batteries are not rapes, all rapes necessarily are batteries."[109] In the context of Louisiana delictual law, the intentional tort of "battery" is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact."[110] An "assault" is, generally speaking, the threat of such harmful or offensive contact.[111] False imprisonment or arrest occurs when one arrests and restrains another against his will and without statutory authority.[112] The tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention.[113] To recover for intentional infliction of emotional distress, a plaintiff must prove: (1) the conduct of the defendant was extreme and outrageous; (2) she suffered severe emotional distress; and (3) the defendant desired to inflict severe emotional distress or knew that

---

[107] Rec. Doc. No. 51-1 at 17.

[108] *Buford v. Williams*, 11-568 (La. App. 5 Cir. 2/14/12), 88 So.3d 540, 548.

[109] *Paul v. Montesino*, 535 So.2d 6, 7 (La.App. 4 Cir.1988), *writ denied*, 536 So.2d 1222 (La.1989).

[110] *Pelitire v. Rinker*, 18-501 (La. App. 5 Cir. 4/17/19), --- So.3d ---, 2019 WL 1646461 at *20 (quoting *Landry v. Bellanger*, 02-1443 (La. 5/20/03), 851 So.2d 943, 949).

[111] *Id.* (quoting *Lawson v. Straus*, 95-1537 (La. App. 4 Cir. 3/14/96), 673 So.2d 223, 226).

[112] *Wilson v. City of Shreveport*, 40,383 (La.App.2d Cir.2/10/06), 921 So.2d 254, *writ denied*, 2006–0509 (La.5/5/06), 927 So.2d 321.

[113] *Plessy v. Hayes Motor Co., Inc.*, 31,947 (La.App.2d Cir.6/16/99), 742 So.2d 934; *Harris v. Eckerd Corp.*, 35,135 (La.App.2d Cir.9/26/01), 796 So.2d 719.

Document Number: 50764

severe emotional distress would be certain or substantially certain to result from his conduct.[114] Negligent infliction of emotional distress is based on La.Civ.Code art. 2315 and is analyzed under the duty-risk analysis.[115] The duty-risk analysis requires the plaintiff to prove: (1) the conduct in question was a cause-in-fact of the resulting harm or damages; (2) the defendant owed a duty of care to the plaintiff that was breached by the defendant; and (3) the risk of harm was within the scope of protection afforded by the duty breached.[116] Notably, at the Rule 12(b)(6) stage, Plaintiff does not have to prove the elements of the aforementioned torts; rather, she simply has to plead plausible factual allegations that state a claim upon which relief may be granted as to the elements set forth above.

Boeker argues: "The fact that the Plaintiff voluntarily returns to the residence of Boeker after being allegedly sexually assaulted proves these claims are frivolous and hold no truth, and refutes any action for false imprisonment. The allegations of the assault, battery, and sexual battery have already been found by a grand jury to hold little evidence of truth."[117] This is the extent of Boeker's argument, and Plaintiff does not address Boeker's substantive challenge to her state law tort claims in her *Opposition*, although she does reiterate alleged facts that support these claims.[118]

The Court finds that Plaintiff's allegations state a claim for all asserted state law torts except NIED. The facts alleged by Plaintiff are detailed, vivid, and disturbing.

---

[114] *Page v. Benson*, 2012-244 (La. App. 3 Cir. 11/7/12), 101 So.3d 545, 554 (citing *White v. Monsanto Co.*, 585 So.2d 1205 (La.1991)).
[115] *Id.* (citing *Dennis v. Wiley*, 09–236 (La.App. 1 Cir. 9/11/09), 22 So.3d 189, *writ denied,* 09–2222 (La.12/18/09), 23 So.3d 949).
[116] *Id.* at 554-55 (citing *Hardy v. Bowie*, 98–2821 (La.9/8/99), 744 So.2d 606).
[117] Rec. Doc. No. 51-1, p. 18.
[118] Rec. Doc. No. 71.
Document Number: 50764

Contrary to Boeker's arguments, there is no "proof" before the Court of frivolity in pleading or in fact. Further, no evidence or developed record is entertained at this stage of proceedings or in this procedural posture, and the Court accepts Plaintiff's pleadings as true for purposes of this motion.

Plaintiff alleges that, following the rape she suffered on December 1, 2016, she left Boeker's home and only returned to Boeker's home when her cousin (Boeker's wife)[119] had returned to the home from a trip, and Plaintiff's return was to collect her personal belongings.[120] Plaintiff alleged that Boeker subsequently violently sexually assaulted her with a foreign object on December 3, 2016. She further alleged that she was unable to escape from the Louisiana State Penitentiary property until the following morning, December 4, 2016, and she did not return again. More specifically, Plaintiff has alleged: "Boeker violently raped Plaintiff;"[121] "Boeker told Ms. Lefebure that no one would be able to hear her scream and insisted she watch in a mirror as he assaulted her;"[122] "Boeker again sexually assaulted Ms. Lefebure … this time with a foreign object;"[123] she "had a sexual assault examination and rape kit done at Woman's Hospital;[124] the "examination noted the assaults … showed bruising on Ms. Lefebure's inner and upper thighs and her right arm and left shin in the pattern of finger and hand prints … noted that her cervix was red and irritated … included photos of the bruising;"[125] Boeker "grabbed a lanyard she was wearing around her neck and pulled her towards him, trying to kiss her;"[126] Boeker

[119] Rec. Doc. No. 37, ¶ 51.
[120] Rec. Doc. No. 37, ¶ 61.
[121] Rec. Doc. No. 37, ¶ 1.
[122] Rec. Doc. No. 37, ¶ 1.
[123] Rec. Doc. No. 37, ¶ 2.
[124] Rec. Doc. No. 37, ¶ 3.
[125] Rec. Doc. No. 37, ¶ 4.
[126] Rec. Doc. No. 37, ¶ 52.
Document Number: 50764

"pulled on the lanyard again;"[127] "Boeker raped Plaintiff Priscilla Lefebure at his home on the grounds of the Louisiana State Penitentiary;"[128] "Boeker grabbed her and threw her on the bed"[129] and "proceeded to hold both of Ms. Lefebure's arms down and pin her to the bed;"[130] Boeker "told her 'I tried to be a gentleman, but I couldn't help myself.' He then forced his penis into Ms. Lefebure's mouth;"[131] Boeker "became angry that she was not cooperating with his assault and forced Ms. Lefebure on her stomach;"[132] "Boeker told her … 'No one can help you. No one can hear you screaming;'"[133] and "grabbed Ms. Lefebure by both of her arms and yanked her up, telling her to get on her knees;"[134] he "forced her legs apart and forced his penis into Ms. Lefebure's vagina, pulling her hair back so hard that her neck hurt and forced her to watch him raping her in the mirror while telling her how beautiful she was;"[135] and Boeker "again sexually assaulted Ms. Lefebure, this time with a foreign object;"[136] Boeker "grabbed her by the arms and tried to pull her out of the room;"[137] he was "standing over her, telling her he had picked the lock on the [children's] door"[138] and "assaulted Ms. Lefebure again, this time forcing her legs apart with his hands and using a sex toy to penetrate her vaginally;"[139] "two assaults left her

---

[127] Rec. Doc. No. 37, ¶ 52.
[128] Rec. Doc. No. 37, ¶ 53.
[129] Rec. Doc. No. 37, ¶ 55.
[130] Rec. Doc. No. 37, ¶ 57.
[131] Rec. Doc. No. 37, ¶ 57.
[132] Rec. Doc. No. 37, ¶ 58.
[133] Rec. Doc. No. 37, ¶ 58.
[134] Rec. Doc. No. 37, ¶ 59.
[135] Rec. Doc. No. 37, ¶ 59.
[136] Rec. Doc. No. 37, ¶ 61.
[137] Rec. Doc. No. 37, ¶ 63.
[138] Rec. Doc. No. 37, ¶ 66.
[139] Rec. Doc. No. 37, ¶ 67.
Document Number: 50764

with at least eleven fingerprint shaped and other bruises;"[140] and Boeker was "masturbating while staring at Ms. Lefebure in his children's bedroom."[141]

In addition to the foregoing allegations of restraint, Plaintiff pleads the following facts which support a claim for false imprisonment: she was "able to get herself to physical safety the next day;'"[142] "Ms. Lefebure had tried earlier in the evening to get a ride off the prison grounds with Mr. Boeker's sister and her husband. Officer and Warden housing at the prison is behind the security gates, which is the only way in and out of the prison;"[143] she was "trapped for the night;"[144] and had "no way to leave."[145]

The foregoing allegations also state a claim for IIED as the conduct alleged qualifies as extreme and outrageous; Plaintiff alleges she has suffered severe emotional distress; and the allegations of brutality suggest Boeker desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

The Court finds, however, that Plaintiff has failed to state a claim upon which relief may be granted as to NIED. There is no mention in Plaintiff's *Complaints* of the duty-risk analysis, and Plaintiff alleges unquestionably intentional acts. Further Plaintiff did not plead or argue the elements of NIED other than stating the claim as a state law tort. Accordingly, Boeker's motion to dismiss Plaintiff's NIED claim is GRANTED; his motion to dismiss all other state law tort claims is DENIED.

---

140 Rec. Doc. No. 37, ¶ 67.
141 Rec. Doc. No. 37, ¶ 68.
142 Rec. Doc. No. 37, ¶ 3.
143 Rec. Doc. No. 37, ¶ 64.
144 Rec. Doc. No. 37, ¶ 65.
145 Rec. Doc. No. 37, ¶ 68.
Document Number: 50764

### E. Rule 12(e) Motion for a More Definite Statement

Boeker alternatively moves for a more definite statement under Rule 12(e). However, Boeker does not address this request beyond a title and closing prayer for relief. "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired."[146]

Here, Boeker does not argue, and the Court cannot find, that Plaintiff's *Complaint* or *First Amended Complaint* is "so vague or ambiguous" that he is unable to prepare a response. Boeker has also failed to "point out the defects complained of and the details desired." Accordingly, the alternative motion under Rule 12(e) is DENIED.

## III. CONCLUSION

For the reasons stated above, Defendant Barrett Boeker's *Motion to Dismiss*[147] under Rule 12(b)(6) is GRANTED IN PART without prejudice and DENIED IN PART as set forth above. Defendant Barrett Boeker's *Motion to Dismiss* under Rule 12(e) is DENIED. Plaintiff is GRANTED leave of court to amend her *Complaint* a second and final time on or before July 25, 2019.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 26th day of June, 2019.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[146] Fed. Rule Civ. Proc. 12(e).
[147] Rec. Doc. No. 51.
Document Number: 50764