**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PRISCILLA LEFEBURE** | * | **CIVIL ACTION** |
| **Plaintiff** | * | |
| | * | **NO. 3:17-cv-01791-SDD-EWD** |
| **VERSUS** | * | |
| | * | |
| **BARRETT BOEKER, et al.,** | * | **JUDGE BRIAN A. JACKSON** |
| **Defendants** | * | |
| | * | **MAGISTRATE JUDGE** |
| | * | **ERIN WILDER-DOOMES** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S OPPOSITION TO BOEKER'S MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendant Barrett Boeker's motion for summary judgment relies on nearly a dozen disputed, material facts, and a judgment of this Court not yet final.[1] Moreover, although Plaintiff is entitled to discovery from Boeker to properly defend against his motion, he has recently refused to sit for his noticed deposition. R.Doc. 178. A ruling in Boeker's favor on this motion would allow him to benefit from his outright refusal to participate in discovery.

Defendant Boeker raped Plaintiff Lefebure in his uniform on the grounds of the Louisiana State Penitentiary in late 2016. After using the force and import of his position as a high-ranking Assistant Warden to aide in his rape and assault of Ms. Lefebure, he then attempted to abuse his power further and sought favorable treatment from other state officials to avoid being investigated for his crimes. To this day Ms. Lefebure remains afraid of law enforcement due to her assault. To this day Defendant Boeker remains free from any accountability.

Although Defendants D'Aquilla and Daniel for conspiracy have been dismissed, Plaintiff can maintain her cause of action for Boeker's violation of 42 U.S.C. § 1983 when he raped her in

---

[1] See Plaintiff's Response and Objections to Defendant's Statement of Facts.

his uniform on the grounds of the Louisiana State Penitentiary. *Tyson v. Sabine*, 42 F.4th 508, 512 (5th Cir. 2022).

**I.  Evidence and Allegations Show Boeker Misused his Authority to Facilitate his Rape and Assault of the Plaintiff, in violation of the Fourteenth Amendment**

Defendant Boeker argues Lefebure "did not claim that Boeker violated her constitutional rights under § 1983." R. Doc. 163-1, Defendant's Memorandum ISO Mot. for Summary Judgement, at 13. Instead, Boeker insists Lefebure claims only that Boeker "conspired with Sheriff Daniel and DA D'Aquilla to violate her [rights]." *Id.* at 14. But that is not correct, Lefebure has alleged and the evidence has shown that Boeker acted under color of law when he raped her in his uniform, at his home, locked behind the walls of the Louisiana State Penitentiary. *See* Plaintiff's First Amended Complaint, R.Doc. 37, ¶¶1, 51-53, 56-58, 61-66, 68, 72, 74, 79, 80; Plaintiff's Response to Defendant's Sep. Statement of Facts at p. 10, ¶¶3-5; Lefebure Deposition at 124:7-14 ("I've been deathly afraid of even just being pulled over ever since, because the badge – because he raped me in his jacket … I've just never been able to look at that symbol, a sheriff or any state official symbol, like, with – on the shoulder or right here the same again.").

In a statement given to the Sheriff's office about the sexual assaults, Ms. Lefebure writes:

"As I returned inside the Angola prison gates to the Boeker's home it appears Barrett Boeker got off work earlier that day…. While still in uniform from work he then downed a pint of whiskey fairly quickly, and tried to proceed to give me multiple shots….. He had a heavy thick work attire jacket on … gave me an Angola employee jacket … engraved with the words Warden and Boeker on the front of it." Exhibit P-3 at p. 2

"His title being Assistant Warden, he portrays himself as being someone who is trying to be a public servant to the Angola community, but he feels it's right to command anyone in his

presence to obey his orders even when they're not an inmate in the prison. He had stayed in his uniform after work when these incidents occurred." Exhibit P-3 at p. 6.

After attempting to scare Ms. Lefebure with the thought of inmates coming into the home to fix a leak while she was there, Boeker "told me how they owned multiple guns, and had shot guns. He proceeded to only show me the silver handgun he had in their safe. I remember him explaining to me how he opens the safe with his fingerprint. I am never really around guns so as it sat in his hand I asked him if it was fully loaded, he proceeded to say yes and show me the bullets in the chamber, and then locked the gun back into the safe." Exhibit P-3 at p. 7.

### a. Fourteenth Amendment Secures Plaintiff the Right to be Free from State-Occasioned Damage to Bodily Integrity.

The substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quotations omitted). "A violation of the right to bodily integrity follows from 'behavior of the governmental officer that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998).

"We have long recognized that physical sexual abuse by a state official violates the right to bodily integrity." *Tyson*, 42 F.4th at 518 (citing *United States v. Guidry*, 456 F.3d 493, 506 n.7 (5th Cir. 2007) (affirming the Fourteenth Amendment protects "the right to be free from sexual assault" committed by a law enforcement officer against a non-detainee); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) (recognizing the established "liberty interest in freedom from sexual abuse by persons wielding state authority"); *Doe v. Taylor Indep. Sch. Dist.* ("*Taylor ISD*") 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc) (holding that "physical sexual abuse" by a government actor violates a child's right to bodily integrity)).

"That is because the core of the right to substantive due process protects against the state's 'exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Id.* (quoting *Lewis*, 523 U.S. at 846); *see also Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) ("[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government [officials] 'from abusing [their] power, or employing it as an instrument of oppression.'" (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196 (1989)). "Because the state has no interest in sexually abusing its citizens, sexual abuse by a state official cannot be justified by any legitimate governmental objective." *Id.*

In *Tyson,* a Sheriff's deputy sexually assaulted a woman on her porch during a welfare check, forcing her to expose herself while he masturbated. 42 F.4th at 513-514. On appeal from a grant of qualified immunity, the defendant deputy argued "that, even if his alleged sexual abuse of Tyson was a clearly established violation of her constitutional rights, he cannot be held liable because he did not act under color of law." *Id.* at 521. The Fifth Circuit was unpersuaded and reversed: "'[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.'" *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 49-50 (1988). Dispelling the notion that the deputy needed to specifically invoke his authority, be on-duty, or attempt to arrest Tyson for his acts to have been taken "under color of law," the Fifth Circuit wrote: "no degree of physical sexual abuse effected for a law enforcement officer's sexual gratification is justified …. whether an officer uses physical or mental coercion, physical sexual abuse by a state official offends the Constitution. No reasonable officer could believe otherwise." *Id.* at 521. Because the defendant deputy in *Tyson* misused the power afforded to him through the State, using it to isolate Tyson and leave her with the impression she could not trust local law

enforcement, he "interwove sexual advances with his authority" which lent an "air of official authority" to the sexual assault. *Id.* at 522 (citations omitted).

In *Bennett v. Pippin*, 74 F.3d. 578, 589 (5th Cir. 1996), a county sheriff raped a crime suspect after she refused to have sex with him telling her "I can do what I want, I'm the Sheriff." The Fifth Circuit found "no error in the district court's conclusion that the Sheriff acted under color of law when he raped Ms. Bennet" in part because the defendant had "used his authority as Sheriff to ascertain whether Ms. Bennett would be released from the hospital on the night of the rape," had control over her impounded truck, and carried the keys to the county jail. 74 F.3d at 589 ("it was not lost on Gail Bennet (or the Sheriff) that the Sheriff carried the keys to [the jail] with him in his pocket and wielded coercive power over [her]."). "Although the alleged sexual assault occurred hours after the sheriff performed his official duty," the Fifth Circuit "found a nexus between the assault and the sheriff's abuse of his official authority." *Tyson*, 42 F.4th at 521 (discussing *Bennett*, 74 F.3d at 589).

### b. Pleadings and Developed Evidence Show Genuine Issues of Material Fact.

For Lefebure's claim under § 1983 for violation of her right to bodily integrity to fail, Boeker must provide the court evidence showing no reasonable jury could conclude his authority and power as the Assistant Warden at Angola were not connected in any way to his sexual assault of Ms. Lefebure in uniform in his home on the grounds of the prison. *U.S. v. Dillon*, 532 F.3d 379, 386 (5th Cir. 2008) ("[w]hile Dillon did not use equipment obtained through his official position to commit the sexual assaults, his attacks were not disconnected from his position of authority."); *Griffin v. Maryland*, 378 U.S. 130, 135 (1964) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity."). Boeker has submitted no such

evidence. *See* Mem. ISO Summary Judgment, R.Doc. 163-1; Boeker Statement of Material Facts, R.Doc. 163-2.

While Barrett Boeker did not use his official position to initially become acquainted with Ms. Lefebure, the implicit coercion that resulted from his status as a high-ranking warden on the prison grounds, the LSP badge sewn into his jacket and on the jacket he raped Ms. Lefebure in, his references to Ms. Lefebure's safety, the guns in his home, his ability through his state position as Assistant Warden to restrict her movement on the grounds and approve or deny her exit from the grounds, along with his threats that no one could hear or protect Ms. Lefebure from his assault all demonstrate that Defendant Boeker's sexual assaults were *in no way* "disconnected from his position of authority."[2] *Dillon*, 532 F.3d at 386; *cf. Delacambre v. Delacambre*, 635 F.2d 407 (5th Cir. 1981) (per curiam) (altercation on premises of municipal police station between police chief and his sister-in-law "arose out of an argument over family and political matters" and was not under color of law).

Like the victim in *Tyson*, Ms. Lefebure was "reasonably left [] with the impression that she could not trust local law enforcement [to report the rape]. . Although the deputy in *Tyson* argued he had not acted under color of law because he "was not on duty" and only Tyson's "subjective belief" supported otherwise, the Fifth Circuit was not swayed, "[c]ritically, Tyson's 'subjective belief' that Deputy Boyd was acting under color of law was born directly from his conduct leading her to think as much." *Id.*; *see also Terrell v. Harris Cnty.*, 625 F.Supp.3d 611, 615 (S.D.Tex. Sep. 6, 2022) (citing *Tyson*) (uniformed but off-duty officer acted "under color of law" when he used his "authority as a deputy to facilitate" his sexual assault of plaintiff). It is certain that as Ms.

---

[2] Of note, Mr. Boeker's wife at the time of the assaults was a uniformed officer and EMT at the Louisiana State Penitentiary. When Lefebure approached her for help "[s]he got some medicine brought over for me from another woman who was employed at Angola Prison" and later, at the hospital while Ms. Lefebure was trying to report the rape, interfered in the exam and "tried to convince me not to do the rape kit." Exhibit P-3 at 16, 19.

Lefebure lay there in Boeker's home on the prison grounds, staring at the LSP badge on the Assistant Warden's jacket while he raped her and told her no one could protect her from him, Ms. Lefebure was aware of the "air of official authority" interwoven into the sexual assault. *Tyson*, 42 F.4th at 522; *Dillon* 532 F.3d at 386.

Going back to *Monroe v. Pape*, 365 U.S. 167, 185 (1961) the applicable test for "under color of law" is "misuse of power possessed by virtue of state law" and "it is not significant for purposes of defeating a § 1983 action that the misuse of power under color of state law was motivated solely for purely personal reasons..." *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) (defendant had ability to violate plaintiff's protected property rights "because he held the office of mayor"); *United States v. Causey*, 185 F.3d 407, 415-16 (5th Cir. 1999) (sufficient evidence to allow jury to conclude officer acted under color of law in arranging for the murder of individual who had filed complaint against him, "officer's status as a police officer had put him in the unique position" of carrying out the conspiracy); *cf. Bustos v. Martini Club Inc.*, 599 F.3d 458, 465 (5th Cir. 2010) (no action under color of law found where off-duty officers were at civilian bar and not in uniform).

To be certain, Boeker was motivated for purely personal reasons, but he misused power he possessed solely by virtue of state law to facilitate his rape of Ms. Lefebure. His ability to restrain her movement and ability to leave the grounds, along with her subjective belief that he could use his position to "command anyone in his presence to obey his orders" and prevent her from reporting the assaults, all lead to an air of authority that pervaded the assaults. *Tyson*, 42 F.4th at 518, 522; *Dillon* 532 F.3d at 386; *Bennett*, 74 F.3d at 589; *Terrell*, 625 F.Supp.3d at 615; *see also Brown*, 631 F.2d at 411; *Causey*, 185 F.3d at 415-16.

The ultimate inquiry on a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). There is ample evidence in the record from which a jury could conclude Barrett Boeker used his authority as Assistant Warden, along with Ms. Lefebure's impression of his authority, to facilitate the rape and sexual assault he committed behind the prison gates in his LSP jacket on December 1 and December 3, 2016. FAC at ¶¶1, 51-53, 56-58, 61-66, 68, 72, 74, 79, 80; Plaintiff's Response to Defendant's Sep. Statement of Facts at p. 10, ¶¶3-5; Lefebure Deposition at 124:7-14 ("I've been deathly afraid of even just being pulled over ever since, because the badge – because he raped me in his jacket … I've just never been able to look at that symbol, a sheriff or any state official symbol, like, with – on the shoulder or right here the same again.").

Boeker's motion for summary judgment should be denied. *Tyson*, 42 F.4th at 522-523; *Bennett*, 74 F.3d at 589 ("abuse of power held uniquely because of a state position," like Boeker's keys to the prison and control over Ms. Lefebure's liberty, sufficient to state under color of law); *Dillon*, 532 F.3d at 387 (5th Cir. 2008) (reasonable jury could find totality of defendant's actions, including invoking power before, during, and after sexual assaults, telling victim no one would believe her because of her criminal background and that he would come after her and her family, "were invocations of his authority intended to compel [victims] top comply with sexual demands and not report the rapes."); *see also Brown*, 631 F.2d at 411 (defendant had "power to take the complaint of action by virtue of his authority, and he took such action while clothed with that authority.").

### c. Formal Issues Framed by Lefebure's Pleadings Are Not Determinative.

To argue that Plaintiff has only shown triable issues of fact for a conspiracy to violate her constitutional rights and not a claim for direct violation of her right to bodily integrity under §

- 8 -

1983, Defendant Boeker must rely exclusively on the pleadings and ignore the facts as developed in the record. *See* Mem. ISO Mot. for Summary Judgment at p. 2, 12-13.

But, "[t]he formal issues framed by the pleadings are not determinative on a motion for summary judgment and evidentiary matter may be developed, showing that the party moved against has presented genuine issues of material fact." *Eastland v. Tennessee Valley Auth.*, 553 F.2d 364, 370 (5th Cir. 1977) (reversing district court grant of summary judgment and noting liberal construction of the discovery rules is "especially true" in cases "where procedural technicalities should not impede the vindication of 'guaranteed rights.'"); *Briley v. Wal-Mart Stores, Inc.*, No. 2:15-CV-439, 2018 WL 276368, at *1 (S.D. Tex. Jan. 3, 2018) (citing *Eastland*, 553 F.2d at 370) (where the facts but not the complaint sufficiently demonstrated triable premises liability issues, plaintiff's failure to "articulate the precise operation of her legal theory" did not entitle defendant to summary judgment); *see also Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").

Ms. Lefebure alleged numerous § 1983 and § 1985 violations in her First Amended Complaint, R.Doc. 37. She also alleged facts showing Boeker abused his authority as an Assistant Warden at LSP when carrying out the assaults and in his attempts to prevent her from reporting and cover up the rape. *See* Plaintiff's First Amended Complaint, R.Doc. 37, ¶¶1, 51-53, 56-58, 61-66, 68, 72, 74, 79, 80. Further developed facts and evidence show that Ms. Lefebure's Fourteenth Amendment right to be free from sexual assault by a state officer was violated. This is sufficient to survive summary judgment. *Id.*; ); *see also Ashley v. Perry*, No. 13-cv-00354, 2015 WL

9008501*2, n. 4 (M.D.La. Dec. 15, 2015) (complaint for violations of Fourth and Fourteenth Amendments supported, along with evidence, a violation under the Eighth Amendment).

If for any reason the court believes Defendant Boeker to have been prejudiced by Plaintiff's failure to articulate the "precise operation of her legal" theory, she asks the court for leave to amend and add the specific count of § 1983 violation of her Fourteenth Amendment right to bodily integrity to the facts already therein. *Hanson v. Flower Mound*, 679 F.2d 497, 504 (5th Cir. 1982) ("complaints are to be construed liberally and leave to amend a complaint is to be granted liberally") (citations omitted).

## II.   § 1983 Conspiracy Claim

Plaintiff understands the Fifth Circuit reversed this Court's sound judgment and dismissed Plaintiff's 1983 claim against the District Attorney for lack of standing because, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." (quoting *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973). But this holding relies on a misreading of the very issues before the court in Linda R.S., which said nothing about the right to an equal investigation, and to the extent *Linda R.S.* could be read to disallow standing to bring a claim against an official for interference in a criminal investigation, it is bad law. Moreover, the entire purpose of the Ku Klux Klan Act, codified as 42 U.S.C. § 1983, was to prevent law enforcement from using their badge to deny equal protection of the laws, and this included the protection afforded to victims by the criminal laws. While Courts may not wish to delve into the decision-making fiefdom of the prosecuting authority, it is well within its historical and Congressionally enunciated powers to prevent the police force from failing to equally protect the very citizens it has sworn a duty to protect.

The right to "non-discriminatory protective services" is clearly established across the Fifth and numerous other circuits. *Kelley v. City of Wake Village*, 264 Fed. App'x. 437, 443 (5th Cir. 2008) (citing *DeShaney v. Winnebago Co. Dep't of Pub. Srvc.*, 489 U.S. 189, 197 (1989); *Beltran v. City of El Paso*, 367 F.3d 299, 304–05 (5th Cir.2004) (reiterating Fifth Circuit test as contained in *Shipp*); *Donahue v. Smith*, No. 15-cv-6036, 2017 WL 3311241, * 16-17 (E.D.La. Aug. 3, 2017) (facts sufficient to state conspiracy and individual liability claims and denying qualified immunity defense because "an objectively reasonable officer would have realized that discriminating against a person with respect to providing police protection was unlawful."); *Cook v. City of Dallas*, No. 12-cv-03788, 2013 WL 12350006, *5-6 (N.D.Tx. Oct. 28, 2013) (citing *Shipp* for gender-based equal protection claim based on law enforcement policies, practices, and customs toward domestic assault and abuse cases); *Connerly v. Town of Franklinton*, No. 03-cv-1507, 2004 WL 1459560, *5 (E.D.La. Jun. 28, 2004) ("clearly there is an established cause of action under the Equal Protection clause" and noting history of availability such a claim "for intentionally discriminatory policies, practices and customs of law enforcement with regard to domestic assault cases."); *Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000), *overruled in part on other grounds by*, *McClendon v. City of Columbia*, 305 F.3d 314, 329-29 (5th Cir. 2002); *see also Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988) ("[a]lthough there is no general constitutional right to police protection, the state may not discriminate in providing such protection."); *Elliot-Park v. Manglona*, 592 F.3d 1003, 1006-7, 1008 (9th Cir. 2010) ("[t]he right to non-discriminatory administration of protective services is clearly established.").

If a state law prohibited the investigation of sexual assaults committed against women, surely such a law would fall under the constitutional right to equal protection. Likewise, such behavior by law enforcement should fall.

While Plaintiff anticipates the court will find her § 1983 conspiracy claim against Defendant Boeker to be devoid of subject matter jurisdiction along with her conspiracy claim against Sheriff Daniel, *see* R.Doc. 156 (Order granting Sheriff Daniel Motion for Judgment on the Pleadings), she again argues that such a holding is incorrect on the law and *Linda R.S.* should not be applied to bar claims against non-prosecutorial authorities.

WHERFORE, Plaintiff Lefebure prays that the Court deny Defendant Boeker's motion for summary judgment.

DATED: June 22, 2023

>Respectfully submitted,
>
>*/s/ Jack Griffith Rutherford*
>Jack Griffith Rutherford, La. Bar No. 34968
>Jessica L. Orgeron, La. Bar No. 32623
>RUTHERFORD LAW
>900 Camp St.
>New Orleans, LA 70130
>Telephone:   (415) 794-5639
>Email:       jgr@rfordlaw.com
>             jess@rfordlaw.com
>**Counsel for Plaintiff Priscilla Lefebure**

### CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of the electronic filing to all counsel and parties registered for electronic service.

>*/s/ Jack Griffith Rutherford*